*In re* MARRIAGE OF ANGELA P. SOMES, Petitioner-Appellant, and ALBERT L. SOMES, Defendant-Appellee.

First District (2nd Division)    No. 79-815

Opinion filed July 29, 1980.

Torme, Horwich & Briskman, of Chicago (Robert I. Briskman, of counsel), for appellant.

Cedrick N. Forbes, of Lansing, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Petitioner Angela P. Somes (petitioner) appeals from an order of the trial court vacating a prior decree entered in a marital dissolution action. For the following reasons, we reverse the vacatur order and reinstate the decree.

On June 12, 1978, a hearing was conducted at which petitioner testified that respondent Albert Somes (respondent) had repeatedly subjected her to mental cruelty; respondent interposed no defense. A property and separate maintenance settlement agreement had not yet been concluded and the trial court requested to be informed in the event

a settlement was reached. At the outset of a second hearing on July 18, 1978, the trial court stated that the parties had arrived at a settlement and that the purpose of the hearing was to elicit testimony as to its terms. Neither party objected to this characterization. Petitioner then testified, without objection by respondent, that under the agreement, she was to retain the savings account ($6,100) and the marital home (fair market value of $50,000), both of which she owned prior to the marriage, and that respondent was to pay her separate maintenance of $60 per week for 44 months.

A recess was then taken after which counsel for petitioner stated that an adjustment to the oral agreement had just been agreed to. Petitioner thereafter testified that under the modified agreement, maintenance payments of $60 per week would be made to her for 60, not 44 months, but would terminate on her death or remarriage. Respondent then testified that the terms of the oral agreement were as petitioner had just indicated. Both parties, upon examination by the court, testified that they had no reservations about the agreement and that there had been no duress or coercion. On September 20, 1978, the trial court entered a decree granting the dissolution and incorporating the terms of the oral settlement agreement.

On October 6, 1978, respondent filed a motion to vacate the decree asserting that the settlement was inequitable and was entered as a result of judicial coercion. At the hearing on this motion respondent, in addressing his inequity theory, testified that based on his projected net earnings he would be unable to support himself in light of the $60 per week payments to petitioner. He submitted an affidavit showing his projected monthly cash inflow at $703, cash outflow at $960, and averring that he had no other source of income. As to coercion, respondent explained that at the July 18 hearing the court said to "give her a couple hundred dollars and get it over with," which led him to believe that he was legally obligated to pay her that amount, and he agreed to do so. The court's statement to him was not contained in the July 18 transcript because it was made during the recess. Although he admitted discussing the $60 per week agreement with his attorneys in the hall during the recess, respondent maintains that he was confused.

Upon cross-examination by petitioner and then by the court, respondent acknowledged that he had the advice of counsel at the July 18 hearing and had testified to his understanding and approval of the agreement. His actual income from Lansing Metalizing Company (Lansing) had been $21,000 in 1977, $27,000 in 1976, $21,000 in 1975, $16,000 in 1974, and $8,000 in 1973. He originally founded Lansing with his son in 1968 although the latter never actively participated in the business. Respondent had always claimed sole proprietorship status for

federal income tax purposes. In December of 1977, shortly before petitioner instituted the dissolution proceedings, he transferred Lansing to his children (by a former marriage); they in turn gave him a promise only to employ him in the future and he continues to run the business. Because his annual salary is now only $11,500, he is unable to afford $60 per week in maintenance payments.

Counsel for both parties were called by the court as witnesses concerning the alleged off-record judicial comments of July 18. Forbes, one of the attorneys for respondent, testified that after the record was stopped and a short recess taken, the court said "is there a possibility to work out a settlement? * * * Why don't you go out in the hall and try to work this thing out?" and as they were leaving the courtroom the judge said "I think she has something coming to her" in the range of a "couple of hundred dollars." Briskman, attorney for petitioner, testified that he didn't remember the court saying this. Jeffers, respondent's other attorney, testified that the court had said "you gentlemen go out in the hall and settle this."

On February 15, 1979, the court vacated the decree, specifically finding that the agreement was not inequitable and that respondent had not been the subject of any fraud or coercion. The court stated, however, that its alleged statements may have had the appearance of impropriety and, on that ground alone, it was vacating the order.

In having specifically found that the settlement was not inequitable, the court rejected respondent's claim that he was unable to economically survive on his income after maintenance payments, presumably in light of the questionable timing and manner of the putative business transfer: respondent, apparently when faced with the threat of the dissolution action, voluntarily transferred his business interest to his children thereby causing a reduction in his average annual income from $18,000 (for preceding five years) to $11,000. The court could well have found this transfer and claimed income reduction, under the circumstances, to have been a sham.

The court also properly found an absence of duress, fraud or coercion concerning the $60 per week agreement. The record discloses that the parties had already agreed to the $60 per week arrangement before the recess was taken and the alleged judicial remarks made. Respondent's recess modification concerned only the duration, not the amount, of maintenance payments. Respondent did not argue at trial nor does he claim on appeal that the duration of payments was coerced; rather, he maintains that the amount, $60 per week, was coerced. Accordingly we find, as did the trial court, that the alleged judicial statements could not have influenced respondent's decision to pay $60 per week because that decision had been made before any judicial comment.

Under the aforesaid circumstances, the trial court's characterization of its alleged statements as having the appearance of impropriety is without support.

A decree incorporating a settlement between the parties merges the contract in the decree and is conclusive upon the parties. The trial court is without authority to vacate the decree unless there is clear and convincing evidence that the agreement was entered as the result of fraud, coercion, duress or is contrary to public policy or morals. (*Chodl v. Chodl* (1976), 37 Ill. App. 3d 52, 344 N.E.2d 711; *Beattie v. Beattie* (1977), 53 Ill. App. 3d 501, 368 N.E.2d 178; *Stutler v. Stutler* (1978), 61 Ill. App. 3d 201, 377 N.E.2d 862.) Here the evidence failed to meet the requisite standard with respect to any of the appropriate grounds.

For the foregoing reasons, we are obliged to reverse the trial court's order which vacated the decree and reinstate the decree.

Reversed.

PERLIN, P. J., and DOWNING, J., concur.