534

*In re* MARRIAGE OF PAULINE REIDY, Petitioner-Appellant, and JOHN REIDY, Respondent (Charles S. Simon, Appellee).

First District (4th Division)   No. 84—1687

Opinion filed June 27, 1985.

Eugene P. Meegan, of Meegan & Meegan, of Chicago, for appellant.

Charles S. Simon, of Simon, Briskman, Briskman, Trinley & Lamb, of Chicago, for appellee, *pro se*.

JUSTICE JOHNSON delivered the opinion of the court:

Pauline Reidy (Pauline) retained the services of Charles S. Simon (Simon) to represent her in an action against her husband, John Reidy (John), to dissolve the Reidy marriage and distribute their marital assets between them. Later, after roughly two years of representation by Simon, Pauline discharged him as her attorney and retained substitute counsel. Simon filed a petition for attorney fees and court costs for his representation of Pauline prior to his withdrawal as her attorney. The petition sought reimbursement from Pauline and/or John.

Approximately one year later, the court dissolved the Reidy marriage in a bifurcated proceeding and reserved the question of distribution of marital assets for subsequent determination. Thereafter, the court entered its final judgment based upon a settlement agreement between Pauline and John regarding distribution of the marital estate. The agreement stated, in relevant part, that John would pay the attorney fees of his own attorney ($1,500), the attorney fees of Pauline's present attorney ($1,500), and that he "shall also pay the fees, if any, that the court may order him to pay to [Simon], former attorney of [Pauline]." Neither the agreement itself nor the court's order pursuant thereto stated whether Pauline would pay any of Simon's fees and costs. The court's judgment stated that it reserved jurisdiction to enforce its terms.

Later, pursuant to a subsequent court hearing upon Simon's petition, the trial court entered an order by which John was directed to pay Simon $1,500 "as his contribution toward attorney's fees due on behalf of Pauline ***." The court's order noted that Simon had reached this agreement with John only, and not with Pauline. The court further ordered that John's payment of the $1,500 was without prejudice to Simon's claim to proceed against Pauline for the balance of attorney fees due "since [Simon] was not given any notice of the terms of [the parties' settlement agreement] and does not release [Pauline] for any liability for said fees allegedly due to [Simon]." The court ordered that Simon's petition be voluntarily withdrawn without

prejudice.

Pauline subsequently filed a motion to vacate the trial court's order by which John agreed to pay Simon $1,500, arguing, *inter alia*, that the court's order constituted a modification of the parties' settlement agreement more than 30 days after the prior order incorporating the agreement had been entered. The trial court denied the motion. Pauline now appeals from the trial court's order that directed John to pay $1,500 to Simon as attorney fees but otherwise allowed Simon to withdraw his petition, and the order that denied her motion to vacate this order.

The sole issue presented for our review is whether the court's order, which directed John to pay the specified portion of Simon's attorney fees, was reversible error as an unauthorized modification of the court's prior order adopting the Reidy settlement agreement. We conclude that it was.

We reverse and remand.

The record discloses that Pauline and John were married on November 3, 1956. Four children resulted from the marriage, all of whom were over 18 years of age by the time the court entered its order that adjudicated property rights and distributed marital assets. At the time the marriage was dissolved pursuant to a bifurcated hearing in 1983, Pauline was 44 years old and John was 46. Pauline was employed as a practical nurse; John was employed as a fire fighter with the Chicago fire department.

The parties' settlement agreement was approved and adopted by the trial court in its judgment. In the agreement, Pauline was given sole ownership of the marital home in Burbank, as well as the personal property therein. No value of the property was stated in the agreement or in the court's judgment. She was also given maintenance of $400 per month for a period of six months. John was given sole ownership of vacant property that the parties had owned in Galena, the value of which was also not disclosed. Pauline waived all rights and claims to any benefits John had in the Firemen's Annuity and Benefit Fund of Chicago, to which John had contributed roughly $30,000 during his employment as a Chicago fire fighter. John and Pauline agreed that each would be the sole owner of the automobile that each was presently driving.

The agreement further stated that the parties' youngest child, age 19, was attending school and residing with Pauline. Although there was no provision for child support, John agreed to pay all medical and dental bills of the children until they attained the age of 25 or were emancipated. They also agreed that John would pay all debts for

which he may be liable, while Pauline would pay all debts for which she was solely liable.

Regarding attorney fees, the document provided:

"The Husband shall pay on the entry of the Dissolution of Marriage the sum of FIFTEEN HUNDRED DOLLARS ($1,500.00) to EUGENE P. MEEGAN, Attorney for the Wife, and shall pay the further sum of FIFTEEN HUNDRED DOLLARS ($1,500.00) to EMANUEL GORDON as and for attorney fees. In addition, the Husband shall also pay the fees, if any, that the court may order him to pay CHARLES S. SIMON, former attorney of the Wife."

The trial court's judgment stated that the court "expressly retains jurisdiction of this cause for the purpose of enforcing all of the terms of this Judgment, including all of the terms of the Separation Agreement made in writing between the parties hereto *** as heretofore set forth."

The record shows that the court reviewed the proposed settlement agreement and heard testimony of the parties and argument of counsel prior to its entry of the final order adjudicating the parties' property rights and distributing the marital assets between them. The transcript of this proceeding indicates that Simon was present at the hearing and was prepared to proceed on his petition for fees once the parties' settlement agreement was reviewed and approved by the court. It further establishes that the court initially permitted Simon to ask questions of Pauline regarding the terms of the settlement agreement but precluded further questioning when Simon attempted to question her regarding interim orders previously entered by the court when she had been represented by Simon. Thereafter, the court accepted the settlement agreement and directed counsel to prepare a judgment that would incorporate the settlement agreement. No hearing was held on Simon's petition on that date, nor was any testimony given regarding the provisions of the settlement agreement regarding payment of attorney fees.

Simon had filed his petition for fees and costs and his detailed affidavit in support thereof shortly before he withdrew as Pauline's attorney in the cause. In the petition, he sought fees from Pauline and/or John. Simon's affidavit in support of the petition consisted of a tabulation of dates, the nature of services performed, and the time expended thereon from June 4, 1980 (the date of Pauline's initial consultation with Simon), until March 20, 1982 (the date of his discharge as Pauline's counsel). It showed a total of 62.5 hours of office work at $100 per hour, for a total of $6,250, and 22.5 hours of court work at

$125 per hour, for a total of $2,812.50. Thus, the amount of attorney fees stated in the affidavit was $9,062.50. It further showed costs of $289.64, for a total of $9,352.14 in fees and costs, and indicated payments received of $1,709.64. The full balance due was stated as $7,642.50.

Pauline's answer to Simon's petition stated, in pertinent part, that Simon had not informed her of any hourly rate for either office time or court time for which she would be charged. She further stated that she had paid Simon a total of $1,415.64 to date for his fees and costs.

The record indicates that during the pendency of the cause before the trial court, John was directed by court orders, pursuant to motions made by Simon, to pay $250 as attorney fees on behalf of Pauline on two occasions (October 24, 1980, and January 13, 1981), for a total due Simon from John of $500. The record is unclear as to the exact amount, if any, that John ever paid to Simon pursuant to these orders. There is some indication in the record that Simon obtained garnishment orders over John's salary to obtain the moneys owed him from John.

The record also establishes that on the same day that the trial court entered its judgment of distribution of marital assets, it entered a separate order continuing its hearing on Simon's petition "for an award of attorney's fees pursuant to Section 508 [of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508)] ***" to August 16, 1983. The cause was subsequently continued for various reasons to October 24 and later to December 14. On this latter date, the cause was reassigned from Judge Wayne Olson to Judge John Reynolds. Judge Reynolds set the matter for trial on February 8, 1984, on which day the hearing began. The transcript of the court's hearing shows that Simon conducted an examination of both John and Pauline as adverse witnesses pursuant to section 2—1102 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1102.) Thereafter, counsel for Simon conducted a direct examination of Simon.

John testified, in pertinent part, that to the best of his knowledge his gross earnings for the year 1983 were $30,000 from his employment as a Chicago fire fighter, which was his sole source of income. He testified that the property in Galena was a vacant lot and that it was not encumbered by a mortgage; he had no idea of its present value. He stated that the marital home in Burbank was also free of mortgage and, in his opinion, had a value of, at most, $57,000. He stated that he had no savings account, stocks, bonds, or other invest-

ments.

Pauline testified that she was employed as a licensed practical nurse; she worked four days a week and her net monthly salary was approximately $800. The court limited Simon's examination of Pauline because it concluded that the prior judgment ordered John to pay Pauline's attorney fees and court costs, which might be owed to Simon. Thereafter, Simon asked Pauline whether she had yet received her W-2 form for the year 1983. When she responded that she had not, Simon terminated his examination.

Simon testified on direct examination conducted by other counsel in his firm who appeared on his behalf. He gave testimony regarding his experience as an attorney in the practice of family law and his opinion of the complexity of the Reidy divorce. He further stated that Pauline had retained his services to represent her in the dissolution action and that he had informed her that she would have to pay him a retainer of $1,000. He stated that he had also told her that she would be charged for his services at the rate of $100 per hour for office time and $125 per hour for court time. He said that he made no representation of a total fee he would charge and that she agreed to these terms and sent him the $1,000 retainer.

Upon the conclusion of direct examination of Simon, the trial court apparently continued further hearing on the matter to April 13, 1984. This date was subsequently changed by court order to May 17, 1984. On that date, the court entered an order expressing that a settlement of Simon's petition for fees had been reached between Simon and John only, and not with Pauline. The judgment ordered John to pay Simon $1,500 as his contribution toward attorney fees due on behalf of Pauline. It further stated that John's payment of $1,500 was without prejudice to Simon's claim to proceed against Pauline for the balance of attorney fees due him pursuant to his petition "since [Simon] was not given any notice of the terms of Judgment for Dissolution of Marriage entered in this cause and does not release [Pauline] for any liability for said fees allegedly due to [Simon]." The court ordered Simon's petition for fees voluntarily withdrawn without prejudice.

The transcript of the trial court's proceedings indicates that counsel for Pauline initially objected to the provisions of a court order proposed by Simon regrading his settlement with John. The specific objections of Pauline's attorney are unclear from this transcript; clarification is not possible because a copy of this proposed order is not in the record on appeal. The transcript does establish, however, that one of the grounds for this objection was that the proposed order

constituted a modification of the previous consent order, and that the court lacked the jurisdiction to make such modifications because more than 30 days had elapsed since entry of that order. It appears the court, thereupon, refused to enter the proposed order and informed the parties that they would have to continue a hearing on the merits until a later date. Apparently, at this point, counsel for Pauline was obliged to leave the courtroom and was substituted by co-counsel, of which the court was so informed. Thereafter, Simon and counsel for John, as well as the lately arrived counsel for Pauline, presented to the court a modified version of the proposed order. Counsel for Pauline did not object to this amended order, and the court entered it as its judgment in the matter. Pauline subsequently filed a motion to vacate this order, which the court denied. It is from these orders that Pauline appeals.

Pauline argues, first, that the trial court's order concerning attorney fees should be reversed because the court lacked jurisdiction to enter it. Specifically, she claims that the order was a modification of the trial court's previous judgment that adjudicated the parties' property rights and distributed marital assets between them pursuant to the provisions of their settlement agreement. She contends that the court did not have the jurisdiction to so modify its prior judgment because 30 days had passed from its entry.

Pauline bases her claim in this regard upon the legal proposition that a court retains jurisdiction to modify its final orders for only 30 days and that thereafter such orders cannot be altered by stipulation or consent of the parties, but can only be changed upon a showing of fraud, duress, or coercion. In support of her contention, she cites *In re Marriage of Rifkin* (1983), 114 Ill. App. 3d 55, 449 N.E.2d 173, *In re Marriage of Somes* (1980), 87 Ill. App. 3d 240, 490 N.E.2d 36, and *In re Marriage of Kekstadt* (1980), 85 Ill. App. 3d 952, 407 N.E.2d 746.

We take no issue with this statement of the law as it relates to a trial court's authority to modify a final judgment pertaining to property rights, although we note that the standard applicable to modification of settlement agreements may be more properly that of section 502 of the Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1983, ch. 40, par. 502) and its judicial interpretations permitting the trial court to modify such agreements where they are found to be "unconscionable." See Ill. Rev. Stat. 1983, ch. 40, par. 502; *In re Marriage of Foster* (1983), 115 Ill. App. 3d 969, 451 N.E.2d 915; *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 428 N.E.2d 1005; *In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 424 N.E.2d

1342.

Pauline also argues that the settlement agreement provided that John would pay all of the attorney fees which arose as a result of the dissolution action. She claims that the trial court's order would release John from any further obligation upon his payment of $1,500 to Simon, and that it would permit Simon to proceed against her individually in a different division of the court of Cook County.

The principle by which we are guided in this regard is the same as that which applies to contracts generally, that is, we must ascertain the intent of the parties according to a fair and reasonable interpretation of the contract, taking into consideration the language of the entire agreement and the circumstances under which it was made. (*In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 74-75, 441 N.E.2d 1221.) The parties' intention will be given full force and effect unless it is repugnant to another rule of law or is against public policy. (*Cimino v. Cimino* (1968), 93 Ill. App. 2d 412, 417, 236 N.E.2d 299.) Our primary objective is, of course, to give the agreement its plain and ordinary meaning according to the intent of the parties. See *Olson v. Olson* (1983), 114 Ill. App. 3d 28, 31, 448 N.E.2d 229.

The settlement agreement between Pauline and John provided, in pertinent part, that John "shall also pay the fees, if any, that the court may order him to pay [Simon], former attorney of [Pauline] ***." On the same day the court entered its judgment that incorporated this provision, the court also entered a separate order that continued until a later date its hearing upon Simon's petition "for an award of attorney's fees pursuant to Section 508 [of the Act] ***." We note that the settlement agreement became an integral part of the court's order; a judgment incorporating a settlement agreement merges the contract in the judgment. *In re Marriage of Somes* (1980), 87 Ill. App. 3d 240, 243, 409 N.E.2d 36.

Based upon these orders, we conclude that the plain and ordinary meaning of the Reidys' agreement, as adopted by the trial court, was to obligate John to pay the amount of Simon's attorney fees, which the court would later order him to pay, in accordance with section 508 of the Act.

Section 508(a) of the Act states, in relevant part, that the trial court "after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse ***." (Ill. Rev. Stat. 1983, ch. 40, par. 508(a).) In order to determine the amount of attorney fees to be awarded, the trial court should consider factors such as "the nature

of the controversy, the question at issue, the significance or importance of the subject matter including its financial aspects, the degree of the responsibility involved, the results achieved, the standing or skill of the attorney employed and the time and labor involved. [Citation.]" *In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 650-51, 420 N.E.2d 555.

■ The trial court's order directing John to pay $1,500 to Simon, as John's contribution to Simon's fees, was not entered upon a consideration of section 508 of the Act and its pertinent case law. Instead, it was entered upon an independent compromise agreement between John and Simon. As a result, the court's order constituted a modification of its previous final order more than 30 days after rendition, which the court was without authority to effect. Accordingly, we conclude that the trial court's order directing John to pay a portion of Simon's fees and permitting Simon to dismiss his petition voluntarily as against Pauline was erroneous. Therefore, the cause must be remanded for further proceedings in accordance with section 508 of the Act.

■ We note Pauline argues that the settlement agreement relieved her of the responsibility of paying any additional portion of Simon's fees. This argument is not well taken. It is presumed that a wife shall bear the expense of her own attorney fees, absent a showing of financial inability to do so. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1121, 421 N.E.2d 1308.) Thus, it was of no particular importance that the agreement failed to specify that Pauline would pay some, or any, of the fees which the court later determined due to Simon. Under the agreement, Pauline agreed that her obligation, if any, was to be fixed by the court pursuant to a section 508 hearing.

■ Lastly, we observe that Simon's argument is based, *inter alia*, upon the premise that the trial court's order adopting the Reidy settlement agreement was void as to him because he was not provided any notice of the terms of the judgment and consequently did not release Pauline from any liability for fees due him. Initially, we question whether notice was not, in fact, afforded to Simon (if any was indeed required), since the record clearly establishes his presence at and participation in the proceeding that culminated in the court's adoption of the settlement agreement. More importantly, however, we conclude that neither the trial court nor the Reidys agreed to anything other than that which Simon's petition itself had always requested, that is, a determination of the amount of fees to which he was entitled according to section 508 of the Act. Because Simon himself sought such

determination from the trial court, he cannot now claim that the court should do otherwise. See *In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 417 N.E.2d 220; *Ziebell v. Board of Trustees* (1979), 73 Ill. App. 3d 894, 392 N.E.2d 101.

Because we conclude that the trial court's orders should be reversed and the cause remanded on the ground explained above, we do not address Pauline's additional contention that Simon should be collaterally estopped from any attempt to obtain his fees in a separate action in the Cook County circuit court against her individually.

For the reasons stated, the orders of the trial court are reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

JIGANTI, P.J., and LINN, J., concur.