In re Marshall Van
SLINGERLAND Debtor.

Marshall Van
SLINGERLAND, Plaintiff,

v.

Marilyn L. SLINGERLAND, Defendant.

Bankruptcy No. 85–30142.
Adv. No. 87–0211.

United States Bankruptcy Court,
S.D. Illinois.

July 28, 1988.

---

Jack Johnston (withdrew 7/28/88), Richard O. Habermann, Vandalia, Ill., for plaintiff.

Paula G. Phillips, Mattoon, Ill., Richard J. Day, St. Elmo, Ill., for defendant.

## ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on the Complaint to Determine Dischargeability of Debt filed by Marshall Van Slingerland (hereafter, plaintiff). At the trial of June 16, 1988, plaintiff failed to appear but was represented by counsel. Plaintiff's former wife, Marilyn L. Slingerland (hereafter, defendant), appeared objecting to discharge of the debt and was represented by counsel.

The facts, compiled from documents certified from the court file of *In re Marriage of Marshall V. Slingerland and Marilyn L. Slingerland*, No. 84-D-14, Fourth Judicial Circuit, Effingham County, Effingham, Illinois, from documents contained in plaintiff's bankruptcy case, No. BK 85-30142, and from defendant's testimony on June 16, 1988, reflect that the parties were married on May 23, 1957. They separated on or about December 1, 1983. They received a Judgment of Dissolution of Marriage on January 10, 1985. At the time of their divorce, plaintiff was 52 years of age and defendant was 48 years of age. Plaintiff had been engaged in private veterinary practice for 27 years and was earning approximately $42,000.00 yearly. The two children born of the marriage were emancipated.

The Judgment of Dissolution of Marriage incorporated the parties' Marital Settlement Agreement (hereafter, Agreement) concerning property and financial matters. The Agreement provided, *inter alia*, in paragraph 4 that defendant receive the jointly owned farm. According to paragraph 4, plaintiff was to assume the note held by Federal Land Bank and secured by a mortgage on the farm, and to hold defendant harmless thereon. This obligation required him to pay $505.00 per month to the bank. The Agreement did not provide that plaintiff's obligation to pay the mortgage would terminate upon defendant's remarriage or death.

In paragraph 19, the Agreement provided that plaintiff would pay defendant the sum of $1,000.00 each month for five years and $500.00 each month for a sixth year as maintenance. It was expressly stated in the Agreement that these payments were to be considered payments of support and maintenance and not a property distribution. In paragraph 21, defendant was awarded rehabilitative maintenance to enable her to obtain a bachelor's degree and employment skills. Rehabilitative maintenance of $166.67 each month was to be paid until December 31, 1988 as long as defendant was enrolled as a full time student.

On March 1, 1985, plaintiff filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. His bankruptcy schedules filed April 1, 1985 listed Federal Land Bank as an unsecured creditor owed

$42,067.72 but failed to list defendant as a creditor. In his Statement of Affairs, in response to questions about payments to dependents, plaintiff stated that he paid $1,167.00 per month plus $505.00 per month mortgage payment for the support of defendant, a dependent not living at home. In copies of computer printouts showing checkbook expenditures—attached as exhibits to his Chapter 13 Monthly Statements of Operations—plaintiff twice referred to his payment to Federal Land Bank as a maintenance payment.

Between October 1985 and March 1986, the parties were involved in litigation in the state court on plaintiff's motion to modify the Judgment of Dissolution of Marriage and on defendant's Petition for Rule to Show Cause. Plaintiff initiated the litigation in an attempt to reduce by half his monthly maintenance obligation of $1,000.00 per month and to eliminate the mortgage payment obligation to Federal Land Bank. In response, defendant sought to have plaintiff held in contempt of the Judgment of Dissolution for non-payment of, *inter alia*, these obligations. According to the documents certified to this Court, plaintiff did not raise as an affirmative defense to the contempt action the discharge in bankruptcy of the mortgage payment obligation.

On March 10, 1986, the state court judge ruled that plaintiff had presented no basis—such as fraud or inequity—to justify the opening of the judgment to eliminate the mortgage payment obligation. While finding defendant's attorney's fees nondischargeable in bankruptcy, the judge was silent on the dischargeability of the mortgage payment debt. He further ruled that plaintiff had failed to show a sufficient change of circumstances to justify a modification of maintenance. Finally, the judge found plaintiff in willful contempt of the Judgment of Dissolution for failure to pay the maintenance and mortgage payment obligations.

On April 23, 1986, plaintiff amended bankruptcy schedule A–3 to add defendant as an unsecured creditor owed $41,000.00. On June 9, 1986, defendant filed a second Petition for Rule to Show Cause for plaintiff's failure to comply with the March 10, 1986 order of the state court. In response, on July 23, 1986, plaintiff filed an answer in which he argued that the mortgage payment obligation was a division of marital property and dischargeable in bankruptcy rather than an award of alimony, maintenance or support. He further sought to enforce the automatic stay to bar the state court from proceeding as to the $41,000.00 debt to defendant listed on amended schedule A–3. It appears from the state court documents that a hearing was never held on this petition.

On December 5, 1986, plaintiff's bankruptcy case was converted to a case under Chapter 7. Thereafter, on January 8, 1987, the § 341 meeting of creditors was held. On this same day, defendant filed in state court a third Petition for Rule to Show Cause again alleging, *inter alia*, that plaintiff was in contempt for non-payment of the maintenance and mortgage obligations.

On February 17, 1987, plaintiff filed his Chapter 7 schedule A–3 which listed defendant as an unsecured creditor. March 9, 1987, the filing deadline for complaints to determine dischargeability under 11 U.S. C. § 523(c), passed without defendant filing an action under 11 U.S.C. § 523(a)(2)(A). On April 28, 1987, plaintiff was granted a discharge in his Chapter 7 bankruptcy case.

On August 14, 1987, after hearing by a second judge on defendant's contempt action, an order was entered in the state court which held, *inter alia*, that plaintiff was in contempt for non-payment of the mortgage and that the state court order of March 10, 1986, by holding plaintiff in contempt, had necessarily found the mortgage debt nondischargeable. Plaintiff appealed this order to the Illinois Court of Appeals and that appeal is now pending.[1]

---

1. This Court held previously, in denying defendant's Motion for Summary Judgment, that it could not be determined from the documents certified to this Court that the state court actually ruled on the merits of the dischargeability issue.

On September 21, 1987, plaintiff filed the instant action in this Court seeking a determination that his obligation to make the mortgage payments was a division of property and thus dischargeable in bankruptcy.

■ A division of property pursuant to a marital settlement agreement or decree of dissolution is a debt which is dischargeable in bankruptcy. *E.g., Matter of Coil*, 680 F.2d 1170, 1171 (7th Cir.1982); *In re Maitlen*, 658 F.2d 466, 468 (7th Cir.1981). An indebtedness for alimony, maintenance or support of a former spouse is not dischargeable. 11 U.S.C. § 523(a)(5). The dispute in this case centers around whether plaintiff's obligation to make mortgage payments to Federal Land Bank for the farm where defendant continued to reside after their divorce, and to hold defendant harmless thereon, was a support obligation or a property division.

■ It is clear that the party asserting the nondischargeability of a debt has the burden of proof. *E.g., In re Myers*, 61 B.R. 891, 894 (Bankr.N.D.Ga.1986); *In re Barac*, 62 B.R. 713, 717 (Bankr.E.D.Mo. 1985); *In re Altavilla*, 40 B.R. 938, 941 (Bankr.D.C.Mass.1984); *In re Edwards*, 31 B.R. 113, 114 (Bankr.N.D.Ga.1983). Accordingly, defendant herein is required to show by a preponderance of the evidence that the mortgage debt is in the nature of a support obligation. *See, e.g., In re Shaw*, 66 B.R. 399, 400 (Bankr.N.D.Ohio 1986); *In re Snider*, 62 B.R. 382, 385 (Bankr.S.D.Tex. 1986). Moreover, consistent with the liberal spirit pervading the entire Bankruptcy Code, in determining whether a particular debt is nondischargeable, exceptions to discharge must be strictly construed against the objecting creditor and liberally in favor of the debtor and the fresh start. *E.g.,* 3 *Collier on Bankruptcy,* ¶ 523.05A at 523–16 to 523–17 (15th ed. 1988) (citing *In re Rahm*, 641 F.2d 755, 756–57 (9th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); *In re Dolnick*, 374 F.Supp. 84, 90 (N.D.Ill.1974)). In the instant matter, as sympathetic as the Court may be to defendant's position, nonetheless, defendant has failed to meet her burden of proving that the obligation in question is one for alimony, maintenance or support.

■ In determining what constitutes alimony, maintenance or support for purposes of dischargeability, the bankruptcy court is not bound by labels imposed by state law. 3 *Collier on Bankruptcy, supra,* ¶ 523.15[1] at 523–105. Rather, the court must look to the substance of the obligation and attempt to effectuate the parties' intent. *E.g., Matter of Coil*, 680 F.2d at 1172; *In re Maitlen*, 658 F.2d at 468. Thus, "it is the basis for creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance." *Matter of Woods*, 561 F.2d 27, 29 (7th Cir.1977).

The Seventh Circuit has discussed four factors to be evaluated in determining what the divorcing parties intended: (1) whether the settlement agreement provides for payments directly to the ex-spouse; (2) whether the provision represents an intention to balance the incomes of the parties; (3) whether the provision creating the obligation is in the midst of provisions allocating property; and (4) whether the provision describes the timing and method of payment and provides for payment of a fixed sum. *Matter of Woods*, 561 F.2d at 29. However, the *Woods* factors are not exhaustive. The Court is free to examine other evidence in the record indicating what the divorce court or the parties intended. *Matter of Coil*, 680 F.2d at 1172.

Applying the *Woods* factors to the facts at hand, the Court obtains inconclusive results. One factor in *Woods* indicating that the obligation was a property division was that payments were made directly to retail creditors and there were no payments of any kind made to the ex-spouse. *Matter of Woods*, 561 F.2d at 30. Here, the mortgage payments were made to Federal Land Bank instead of directly to defendant. However, the Seventh Circuit has distinguished from *Woods*, as less tenuous and more direct, a former spouse's obligation to make mortgage payments as they fall due each month for the house in which the other spouse continues to live post-divorce.

*In re Maitlen,* 658 F.2d at 469. *Woods* also instructs that the character of the payment must be examined. Fixed sum payments made periodically rather than in gross are more likely to be in the nature of maintenance. *Matter of Woods,* 561 F.2d at 30. In the instant case, the payment is made to Federal Land Bank monthly and it is for a fixed amount. Thus, two *Woods* factors indicate that the obligation was intended to be for maintenance and support.

The other two *Woods* factors lead to the opposite conclusion. In *Woods,* one factor indicating that the obligation was a division of property was the location of the provision in the marital settlement agreement amid the other provisions allocating property. *Id.* That is the situation here. The mortgage payment obligation is found among other clauses dividing marital property and debts and is separate and apart from the clauses dealing with maintenance and support for defendant.

Additionally, defendant provided the Court with insufficient evidence to show that the mortgage payment obligation was intended to balance the relative incomes of the parties. The Agreement contained two clauses expressly providing maintenance and rehabilitative maintenance to defendant. These totaled $1,167.00 per month. Defendant was the sole witness at the trial of this matter. However, she gave no testimony concerning her need for support at the time of the divorce. Conspicuously absent from her testimony was any suggestion that the parties intended for the mortgage payment to be in the nature of additional maintenance, or that because of this payment by plaintiff she agreed to settle for less direct maintenance. In fact, the scant evidence before the Court on the issue of defendant's need for support consisted of language in the Agreement setting forth rehabilitative maintenance for defendant to obtain a college degree and employment skills. Without more, the Court is unable to find that defendant's needs exceeded the maintenance already set forth in the Agreement and that the mortgage payment obligation was intended to offset this deficit.

Accordingly, analysis of the *Woods* factors does not resolve the question before the Court. But, as noted above, these factors are not exclusive. Another factor to be considered is whether the obligation terminates upon the death or remarriage of the recipient—termination under these conditions tending to indicate that the payment is for support. *E.g., In re Maitlen,* 658 F.2d at 469–70. Here, the Agreement is silent about termination of the plaintiff's obligation to pay the mortgage, leading to the conclusion that the obligation is a property division. *Id.* Yet another factor is the tax treatment of the payments; maintenance being a deductible expense of the obligated former spouse and taxable to the recipient. *E.g., Tilley v. Jessee,* 789 F.2d 1074, 1078 n. 3 (4th Cir.1986). Again, the Agreement is silent on this point and defendant failed to adduce evidence at trial to show how she or plaintiff treated the payments for income tax purposes.

Defendant has raised two arguments in support of her position that the obligation was intended to be maintenance or support. However, both arguments require the Court to infer the parties' intent at the time of the divorce from actions occurring months later. Initially, defendant points to those instances in plaintiff's bankruptcy petition, schedules and checkbook reviews, noted above, where plaintiff referred to the payment to Federal Land Bank as maintenance. However, except for the checkbook reviews, these references are ambiguous at best. As to the checkbook reviews, in which plaintiff labeled two payments to Federal Land Bank as maintenance on a computer printout, the Court finds this unconvincing proof. Section 523(a)(5)(B) of the Bankruptcy Code, 11 U.S.C. § 523(a)(5)(B), makes clear that the mere designation of a debt as alimony, maintenance or support will not create a nondischargeable debt unless the liability is actually in the nature of alimony, maintenance or support. *E.g.,* 3 *Collier on Bankruptcy* ¶ 523.15[5] at 523–112 to 113. Even more significant to the Court is the fact that defendant failed to testify that there was a shared intent at the time of negotiating and executing the Agreement that the obli-

gation be for her maintenance and support. *See, e.g., Tilley v. Jessee,* 789 F.2d at 1077–78. Defendant's absolute omission of evidence on this point forces the Court to conclude that the parties did not share this understanding.

Defendant's second argument asserts that plaintiff impliedly admitted that the obligation was in the nature of maintenance when he was subject to contempt proceedings in the state court yet failed to raise the affirmative defense that the obligation was discharged in bankruptcy. As the Court previously noted in denying defendant's Motion for Summary Judgment, the documents certified from the state court are insufficient to draw the inferences suggested by defendant, and defendant failed to provide a transcript of the proceedings on which she relies or further testimony on this subject. In fact, the March 10, 1986 order of the state court actually contradicts defendant's position that the obligation was considered to be maintenance because it treats the mortgage payment obligation as a nonmodifiable property settlement which could not be reopened absent fraud or inequity. See Ill.Rev.Stat. ch. 40, para. 510(a). See also *In re Marriage of Christianson,* 89 Ill. App.3d 167, 44 Ill.Dec. 397, 411 N.E.2d 519, 524 (1980); *In re Marriage of Somes,* 87 Ill.App.3d 240, 42 Ill.Dec. 541, 409 N.E.2d 36, 38 (1980). Moreover, because plaintiff originally filed for relief under Chapter 13 of the Bankruptcy Code, at the time of the initial contempt proceeding he had not completed payments under his plan and had not been discharged from any of his debts. Thus, the affirmative defense of discharge in bankruptcy was not available to him.

Finally, defendant argues that the mortgage payment obligation, if not within the terms of 11 U.S.C. § 523(a)(5), is nonetheless nondischargeable under 11 U.S.C. § 523(a)(2)(A) as a debt induced by false representations. Defendant's testimony at trial was directed exclusively at proof of this argument. She testified that plaintiff induced her into executing the Agreement by assurances that his financial position was sound while intending to file bankruptcy only a few months later.

However, the Court will not address the merits of this argument because defendant is time-barred from asserting it under 11 U.S.C. § 523(c) and Bankruptcy Rule 4007(c). Plaintiff's bankruptcy case was converted to a proceeding under Chapter 7 on December 5, 1986. The § 341 meeting of creditors was held on January 8, 1987. The last date to file a complaint objecting to discharge of a debt pursuant to 11 U.S. C. § 523(a)(2)(A) was March 9, 1987. However, defendant has never filed a complaint under 11 U.S.C. § 523(a)(2)(A). Her allegations of false representation were first raised at trial on June 16, 1988 and are far beyond the statutory limit.

IT IS ORDERED that the debt of $41,-000.00 owed to defendant by plaintiff is declared to be discharged in bankruptcy.