In re William W. HOPSON, Debtor.

Paige L. HOPSON, Plaintiff,

v.

William W. HOPSON, Defendant.

Bankruptcy No. A92–62237–JB.
Adversary No. 96–6675.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 16, 1998.

J.D. Humphries, III, Varner, Stephens, Humphries & White, Atlanta, GA, for debtor/defendant.

George M. Geeslin, Atlanta, GA, for plaintiff.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

This matter is before the Court on a motion for summary judgment filed by defendant William W. Hopson. Plaintiff, debtor's ex-wife, brought this adversary proceeding against the debtor, requesting a determination that a debt incurred as a part of a divorce settlement is not dischargeable under 11 U.S.C. § 523(a)(5). The debt at issue is a promissory note for $85,000.00. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

After carefully reviewing the briefs and affidavits filed by the parties, the Court finds that material disputed facts and issues exist which make summary judgment inappropriate at this time. Nevertheless, when a motion is brought under Fed.R.Bankr.P. 7056, incorporating Fed.R.Civ.P. 56, and judgment is not rendered for all the relief requested, the Court can, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually in good faith controverted. In accordance with Fed.R.Civ.P. 56(d), the Court finds that a number of facts exist without substantial controversy.

### I. Undisputed Facts

The debtor and the plaintiff were married in 1966 and divorced in 1990. Plaintiff filed for divorce in the Superior Court of Fulton County, and the parties settled their differences and signed an agreement entitled Alimony and Property Settlement Agreement (the "Agreement") dated October 26, 1990. This Agreement was incorporated into a divorce decree rendered by the Superior Court of Fulton County on November 27, 1990.

Paragraph 14 of the Agreement, entitled "Alimony," provided as follows:

Husband, upon execution of this Agreement, shall pay to Wife the sum of $3,400.00 per month as alimony for the support and maintenance of Wife, such periodic payments shall continue until Wife dies or remarries, or until the expiration of sixty-six (66) months after the date of execution of this Agreement, whichever event shall first occur. The foregoing payments shall be made on the first day of each month, beginning November 1, 1990, and continuing thereafter as provided by this paragraph. Husband shall, in addition, pay to Wife the total sum of $7,000.00 as additional alimony for the support and maintenance of Wife during calendar year 1991. Such additional alimony shall be paid at the rate of $1,000.00 per month beginning January 1, 1991. Husband shall not be liable for any payment of alimony after the death or remarriage of Wife or after sixty-six (66) months from the execution of this Agreement.

Debtor filed for Chapter 7 bankruptcy relief on February 5, 1992. The alimony payments were scheduled in the debtor's bankruptcy as an undisputed claim. That debt was not discharged, and debtor has paid this debt in full.

Only one debt provided for by the Agreement has not been paid by the debtor, and the dischargeability of that debt is the sole issue before the Court. That debt is described in ¶ 11 of the Agreement, which is entitled "Investments." The first subsection of ¶ 11 identifies six investment properties held in the husband's name. The second sub-paragraph, ¶ 11(b), states that plaintiff's claims or interests in these six investments are released in exchange for a promissory note. The Agreement provides, in pertinent part, as follows: "It is the intent of the parties hereto that the exchange of property pursuant to this Section 11 shall constitute an equitable division of property to be governed by Internal Revenue Section 1041 (as amended) and shall not constitute taxable alimony to either party."

The note is described in ¶ 11(c) as a promissory note in the amount of $85,000.00. The payment terms are listed as follows:

(1) $35,000 shall be due and payable to Wife on or before April 1, 1996;

(2) $35,000 shall be due and payable to Wife on or before April 1, 1997;

(3) $15,000 shall be due and payable to Wife on or before April 1, 1998;

(4) Said Promissory Note shall bear no interest during the first sixty-six (66) months. After sixty-six (66) months said Promissory Note shall bear interest at the rate of nine percent (9%) per annum, and shall be payable with the annual payment;

(5) Said Promissory Note may be prepaid in whole or in part and at any time without notice or penalty;

(6) Said Promissory Note shall provide that in the event of Wife's remarriage or death prior to the date of the first scheduled payment, as set forth in (1) above, the payment schedule shall be accelerated to provide that the first payment, as set forth in (1) above, shall be due and payable on the earlier of the scheduled date or ninety (90) days after the occurrence of such death or marriage and the remaining payments shall be due and payable annually thereafter in the amounts set forth in (2) and (3) above on the succeeding anniversaries of the date on which the first payment is made. Said Promissory Note shall bear interest in accordance with (4) above, regardless of any such occurrence of Wife's death or remarriage.

(7) Said Promissory Note shall provide that upon the Wife's election in writing the payments otherwise due under (1), (2) and (3) above shall be made in thirty-six (36) equal monthly installments of $2,361.11 each plus interest beginning April 1, 1996. The election, if made by Wife, will not alter, amend or otherwise modify the provisions of (4), (5) or (6) above, except that said election shall be available to Wife under (6) above.

(8) It is the intent of the parties hereto that Wife shall bear no cost or expense for Federal and/or State income taxes (and interest and penalties thereon) in the event interest is imputed to Wife under the said Promissory Note for Federal and/or State income tax purposes in accordance with law and published regulations as of October 1, 1990. In the event interest is imputed to Wife under said Promissory Note for Federal and/or State income tax purposes in accordance with such law and published regulations as of October 1, 1990, then in such event Husband agrees to indemnify and hold Wife harmless for any such costs or expenses incurred by Wife as a result of such imputation of interest. Husband shall have no indemnity obligation in connection with any tax owed by Wife respecting said Promissory Note or any other provisions of this Agreement arising out of laws made or regulations published after October 1, 1990.[1]

This note to Mrs. Hopson was scheduled by debtor in the bankruptcy case as a "property settlement" in the amount of $85,000.00. Mr. Hopson received a discharge on May 27, 1992, and plaintiff received notice of the discharge. The case was closed on June 15, 1992.

In September of 1996, debtor sought to reopen this case. The parties filed various motions referenced in the Court's Order of February 21, 1997.[2] In addition, Mrs. Hopson filed the instant dischargeability proceeding under 11 U.S.C. § 523(a)(5), contending that the note obligation is in the nature of support or maintenance and that the debt was not covered by debtor's bankruptcy discharge.

## II. The Summary Judgment Motion

On October 21, 1997, defendant filed a motion for summary judgment, contending that the note obligation is a dischargeable property settlement as a matter of law. Plaintiff filed a response, arguing that the intent of the parties to the Agreement was that this note obligation be in the nature of alimony, support or maintenance. To support her response, plaintiff submitted two affidavits: an affidavit by the plaintiff and an affidavit by plaintiff's divorce attorney, Bax-

---

1. After subsection (7) of ¶ 11(c), there is handwritten the notation: "(8) See Addendum—Exhibit 'A' Attached." The text of subsection (8) is taken from this Addendum.

2. Defendant appealed the February 21, 1997 Order, and the United States District Court entered an Order affirming the Bankruptcy Court on September 16, 1997.

ter L. Davis. In Ms. Hopson's affidavit, she states that for most of the marriage, she was a housewife and mother, did not work, and depended almost exclusively on her husband for support. She states that the design of the note was at all times to pay off the debt on the house, "as a matter of maintenance and support." She states that labeling the $85,000.00 note in the Agreement as an equitable division of property was designed for tax purposes only. Mr. Davis states in his affidavit that the amount of the note was tied directly to the mortgage on the home, and that the note was to insure that Mrs. Hopson could pay off the mortgage so she could remain in the home. He further states that the note payments were scheduled to begin immediately after the termination of the periodic payments of support and that the Agreement contained a provision allowing Mrs. Hopson to elect to receive monthly payments, which provision was negotiated to enable Mrs. Hopson to make the monthly mortgage payments on the home.

Defendant filed a reply brief, vigorously disputing that the note was intended to be used to pay mortgage payments. He contends that in 1994, two years before the note became due, Mrs. Hopson actually sold the house for $270,000.00, an amount far in excess of the $85,000.00 note. Defendant also argues that plaintiff is estopped from asserting a claim under § 523(a)(5), that principles of contract construction preclude the Court's consideration of the affidavits of plaintiff and Mr. Davis, and that even considering the disputes of fact raised by the affidavits, the debtor is entitled to a judgment that this debt is dischargeable as a matter of law.

▮ Section 523(a)(5) provides that a debt is not dischargeable if it is "actually in the nature of alimony, maintenance or support." 11 U.S.C. § 523(a)(5); *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 904 (11th Cir.1985). The exact text of the statute reads:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—. . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance

for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5) (1994 & Supp.1996). The party seeking to hold the debt nondischargeable has the burden of proving by a preponderance of the evidence that the obligation was intended as support and that the substance of the obligation was in fact support. *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 723 (10th Cir.1993) (citing *Grogan v. Garner*, 498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991)); *Person v. Karell (In re Karell)*, 200 B.R. 700, 701 (Bankr.N.D.Ga.1995). Exceptions to discharge are to be strictly construed, and the burden is on the creditor to prove the exception. *Karell*, 200 B.R. at 701; *Brody v. Brody (In re Brody)*, 154 B.R. 408, 412 (E.D.N.Y.), *aff'd*, 3 F.3d 35 (2d Cir.1993).

▮ The determination of whether an obligation is in the nature of alimony, maintenance or support is a question of federal bankruptcy law. *Harrell*, 754 F.2d at 905; *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983). Labels given to particular debts under state law or by agreement of the parties may be persuasive, but they are not controlling. *Brody*, 3 F.3d at 38. The bankruptcy court should look to the substance of the obligation, not to its form, to determine if the obligation is alimony, maintenance or support. *Slingerland v. Slinger-*

land *(In re Slingerland)*, 87 B.R. 981, 984 (Bankr.S.D.Ill.1988); *Hack v. Laney (In re Laney)*, 53 B.R. 231, 232 (Bankr.N.D.Tex. 1985). If the debt in question is contained in a settlement agreement, the critical inquiry is to ascertain the intent of the parties at the time they entered into the settlement agreement. *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir.1986); *Calhoun*, 715 F.2d at 1109; *Bedingfield v. Bedingfield (In re Bedingfield)*, 42 B.R. 641, 646 (S.D.Ga. 1983); *Slingerland*, 87 B.R. at 984; *Coffman v. Coffman (In re Coffman)*, 52 B.R. 667, 672 (Bankr.D.Md.1985).

■ Defendant's primary argument is that traditional principles of contract interpretation and construction preclude consideration of plaintiff's affidavits or any evidence that the parties intended the $85,000.00 note to be in the nature of support or maintenance. Defendant argues that the language in the Agreement is unambiguous and that extrinsic evidence may not be used to determine the parties' intention. Significantly, the cases cited by defendant do not involve actions under § 523(a)(5) or agreements in divorce cases.[3] The relevant cases are those involving § 523(a)(5), and these cases suggest that traditional contract principles do not preclude extrinsic evidence of the parties' intent, where the issue before the court is whether a debt created in an agreement settling a divorce case is in the nature of support or maintenance for purposes of a § 523(a)(5) dischargeability determination. In such actions, the courts have been reluctant to limit their consideration to the four corners of the agreement.

In *Brody v. Brody (In re Brody)*, 3 F.3d 35 (2nd Cir.1993), the court affirmed the

bankruptcy court's decision that a $1 million obligation to be paid in installments was a support obligation rather than a property settlement. The case involved a separation agreement, which referred to this obligation in a paragraph entitled "Distributive Award" and stated the $1 million was "in full satisfaction of all claims by the wife to equitable distribution of the marital estate." *Id.* at 37. Nonetheless, the court considered the parties' testimony on intent. The wife and her divorce lawyer testified that the $1 million obligation was designed to generate an annual income for her to be used as support. The husband and his lawyer testified that the $1 million obligation was intended to represent half of the marital estate and had not been intended as support. The bankruptcy court found the wife's testimony more credible and held that the debt was actually in the nature of alimony or support and thus not dischargeable. The Second Circuit affirmed, holding that although a written manifestation of agreement is persuasive evidence of intent, "the label that the parties attach to a payment is not dispositive; the court must look to the substance, and not merely the form, of the payments. The parol evidence rule does not apply in cases such as the instant one, and factual inquiry under section 523(a)(5) is not limited to the four corners of a separation agreement or divorce decree." *Id.* at 38–39 (citations omitted).

The court in *Tsanos v. Bell (In re Bell)*, 47 B.R. 284 (Bankr.E.D.N.Y.1985) commented on the applicability of the parol evidence rule to § 523(a)(5) cases as follows:

[N]otwithstanding the parol evidence rule, a bankruptcy court is bound by the statute to look beyond the agreement in order to determine the underlying purpose of the

**3.** The cases relied on by defendant involve construction contracts *(Walton v. Datry*, 185 Ga.App. 88, 363 S.E.2d 295 (1987)), insurance contracts *(Park 'N Go of Ga., Inc. v. United States Fidelity and Guar. Co.*, 266 Ga. 787, 471 S.E.2d 500 (1996)), asset purchase agreements *(Lummus Corp. v. Unsecured Creditors' Comm. of Lummus Industries, Inc. (In re Lummus Dev. Corp.)*, 85 F.3d 575 (11th Cir.1996); *Wickliffe v. Wickliffe Co.*, 227 Ga.App. 432, 489 S.E.2d 153 (1997)), real estate purchase agreements *(Century 21 Pinetree Properties, Inc. v. Cason*, 220 Ga.App. 355, 469 S.E.2d 458 (1996)), guarantees *(Congress Fin. Corp. (Southern) v. Commercial Technology,* *Inc.*, 910 F.Supp. 637 (N.D.Ga.1995)), release agreements between former employers and former employees *(Bradley v. British Fitting Group, PLC*, 221 Ga.App. 621, 472 S.E.2d 146 (1996)), non-compete agreements *(Walker v. Virtual Packaging, L.L.C.*, 229 Ga.App. 124, 493 S.E.2d 551 (1997); *Marcre Sales Corp. v. Jetter*, 223 Ga.App. 70, 476 S.E.2d 840 (1996)), security deeds *(Club Assocs. v. Consolidated Capital Realty Investors (In re Club Assocs.)*, 951 F.2d 1223 (11th Cir. 1992)), and invention agreements *(Georgia–Pacific Corp. v. Lieberam*, 959 F.2d 901 (11th Cir. 1992)).

debt assumption; i.e., whether the debts were assumed in lieu of regular alimony payments, or only as a means of dividing property. Such an inquiry must take the bankruptcy court beyond the face of any separation agreement or state court judgment.

*Id.* at 287.

The rationale for allowing extrinsic evidence is suggested in *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762–63 (3rd Cir. 1990), where the court noted that it is likely that parties do not contemplate the effect of a subsequent bankruptcy when they enter into a settlement agreement, and often an obligation designated as a property settlement may be related to support. *See also Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 & nn. 5–6 (5th Cir.1987) (where the Fifth Circuit held that the Bankruptcy Code requires the court to determine the true nature of the debt, regardless of the characterization placed on it by the parties' agreement, and in doing so, the bankruptcy court may consider extrinsic evidence); *Sampson v. Sampson*, 997 F.2d 717, 722 (10th Cir. 1993); *Young v. Young*, 35 F.3d 499, 500 (10th Cir.1994) (where the Tenth Circuit held that an unambiguous settlement agreement in a divorce case does not end the inquiry, and bankruptcy courts must look beyond the language of the agreement to the intent of the parties and the substance of the obligation to determine whether the obligation is actually in the nature of alimony, support and maintenance.) These cases are persuasive, and the Court will consider the affidavits in deciding the summary judgment motion.

█ Defendant also argues that he is entitled to summary judgment, even if the Court considers the affidavits of Mrs. Hopson and her divorce lawyer, Mr. Davis. Defendant is correct that the Agreement is the starting point in the analysis regarding intent of the parties, and the Court agrees that the language and structure of the Agreement here suggest that the mutual intent was for the $85,000.00 note to be part of a property settlement. The note is described under a heading in the Agreement called "Investments," and the provision states that the exchange of property is to be construed, for tax purposes, as an equitable division of property, not alimony. The obligation does not terminate upon the wife's death or remarriage, and there is no mention in the Agreement that this $85,000.00 note is related in any way to maintaining the home. Nonetheless, construing the evidence in the light most favorable to the non-moving party, as the Court must do on a motion for summary judgment, the Court finds that Mr. Davis' affidavit creates a disputed issue of material fact. *See Hershey v. City of Clearwater*, 834 F.2d 937, 941 (11th Cir.1987). The affidavit appears to present evidence of a mutual intent that is contrary to the Agreement. Mr. Davis states that Mrs. Hopson had not worked outside the home during the twenty-three year marriage, that the $85,000.00 note was tied to the house mortgage, and the note was to insure that plaintiff could pay off the mortgage and live in the house. Defendant disputes all of the facts proffered in Mr. Davis' affidavit. The Court cannot determine the probative value of this evidence or the credibility of the parties, without hearing live testimony. Even in cases where the divorce agreement is so clear as to create a "substantial obstacle," the courts still hear the evidence. *See Tilley v. Jessee*, 789 F.2d 1074, 1078 (4th Cir. 1986).

There is also a disputed fact as to when Mrs. Hopson knew that Mr. Hopson contended this debt was discharged by the bankruptcy. Defendant submitted an affidavit of Alvin B. Ginsberg, the lawyer who represented the debtor in filing the bankruptcy in 1992. Mr. Ginsberg states that Mrs. Hopson was present at the first meeting of creditors and after the first meeting of creditors, Mrs. Hopson telephoned Mr. Ginsberg and asked him whether the $85,000.00 property settlement was discharged by the bankruptcy proceeding. Mr. Ginsberg states that he affirmatively represented to her that it would be discharged. In Mrs. Hopson's affidavit, she states that at no time prior to the close of the bankruptcy case did she have a conversation with Mr. Ginsberg regarding the discharge of the debt. She states, however, that she knew from Mr. Hopson in 1994 that he contended the debt had been discharged. While

neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure contain a deadline for filing complaints to determine dischargeability under § 523(a)(5), the testimony on this issue may have a bearing on the credibility of the parties.

Finally, defendant argues that ¶¶ 18 and 20 of the Agreement preclude plaintiff from bringing an action under 11 U.S.C. § 523(a)(5).[4] This argument is without merit. Paragraph 18 does not explicitly waive the right to seek a determination of non-dischargeability under the Bankruptcy Code. Furthermore, even if the parties had attempted to make a determination regarding dischargeability in advance of the filing of the bankruptcy petition, such a provision would be unenforceable. *See Engram v. MacDonald (In re MacDonald),* 194 B.R. 283, 287 (Bankr.N.D.Ga.1996); Henry J. Sommer *et al.,* COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 6.04[3], at 6–31 & n. 16

(1997) ("The parties may not agree in advance, contrary to the provisions of the Bankruptcy Code[,] that a debt will be non-dischargeable in a bankruptcy case ..."). Similarly, ¶ 20 of the Agreement, which prevents the parties from bringing an action to modify alimony, is not relevant here. This adversary proceeding is not an action to modify alimony or to modify the Agreement, but is an action to determine dischargeability under § 523.

In accordance with the above reasoning, defendant's motion for summary judgment is DENIED.

**4.** Paragraphs 18 and 20 of the Agreement provide as follows:

18. *PROPERTY SETTLEMENT WAIVER AND RELEASE.* The parties expressly agree, upon execution of this Agreement, that any and all issues, claims and differences concerning property settlement that may exist between the parties are hereby finally and completely reconciled, resolved and settled and that any and all issues, claims and differences that may arise in the future concerning property settlement are hereby forever waived and released.

20. *AMENDMENTS TO AGREEMENT.* Except as specifically provided herein, no modification or waiver of the terms of this Agreement shall be made except with the express written consent of the parties. The parties expressly waive the right to bring an action in a court of competent jurisdiction to modify the provisions for periodic alimony as contained in this Agreement. Modifications of periodic alimony, if any, shall be made in strict accordance with this paragraph.