**Mary Lee NICHOLS, Plaintiff-Appellee,**

v.

**Benton M. HENSLER,
Defendant-Appellant.**

**No. 75–1074.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1975.

Decided Jan. 6, 1976.

---

Dean E. Richards, Indianapolis, Ind., for defendant-appellant.

Irving L. Fink, Indianapolis, Ind., for plaintiff-appellee.

Before STEVENS, Circuit Justice,[*] TONE, Circuit Judge, and HOFFMAN, Senior District Judge.[**]

TONE, Circuit Judge.

The issue before us is the dischargeability in bankruptcy of an obligation to make payments labeled "alimony" in a 1960 Indiana divorce decree. The District Court, without hearing evidence bearing on the issue of dischargeability, entered judgment in favor of the former wife, holding that the obligation was not discharged. We vacate the judgment and remand for a hearing.

Before the entry of the divorce decree the parties entered into a written "Property Settlement Agreement." This agreement allocated between the husband and wife specifically described property, including real estate, securities, automobiles, and insurance policies. It also provided for adjusting payments of cash from one party to the other with respect to certain items of the allocated property. The husband was to pay "for the special care and maintenance" of one of the four minor children of the marriage. Then followed the paragraph creating the obligation which is in issue in the case at bar.

"11. The HUSBAND shall pay to the WIFE a sum certain of One Hundred Twenty-one Thousand Dollars ($121,000.00) in equal monthly installments of One Thousand Dollars ($1,000.00) each, the first installment

---

[*] Mr. Justice Stevens participated initially as Circuit Judge, and on and after December 19, 1975 as Circuit Justice.

[**] Senior District Judge Julius J. Hoffman of the Northern District of Illinois is sitting by designation.

of which shall be due and payable on or before the first day of each calendar month thereafter, until One Hundred Twenty-one (121) of such installments have been paid; and it shall be agreed between HUSBAND and WIFE that the sum of Two Hundred Fifty Dollars ($250.00) of each said monthly installments shall be considered as payment to WIFE for the support and maintenance of such minor children as shall be in her care and custody; the balance of such monthly installments shall be considered as payment by HUSBAND to WIFE for and as payment of alimony."

The husband further agreed, in paragraph 12, to pay to the wife "an additional sum certain" of $30,000.00 "as and for alimony," to be paid in $500.00 monthly installments, which terminated upon the wife's remarriage. The husband was also required to maintain life insurance to cover unpaid alimony payable under paragraph 11, but not under paragraph 12.

The divorce decree recited that in the agreement the parties had agreed "to divide all of the marital property," subject to the court's approval and the awarding of a divorce decree, and that the agreement "is a fair and equitable division of the marital property. . . ." The agreement was also approved and incorporated by reference into the decree as a part thereof.

Some time after the divorce, the former wife remarried, whereupon the former husband stopped paying not only the $500.00 per month provided for in paragraph 12 of the agreement but also the $1,000.00 per month called for in paragraph 11. Both parties having moved to California, the former wife sued in a court of that state for the unpaid paragraph 11 alimony and recovered a default judgment for the amounts then owing. The former husband later returned to Indiana, where, in 1970, he was sued again by the former wife, this time in a diversity action in the District Court. The court, in May of 1971, awarded the plaintiff $82,000.00 "for un-paid alimony, including the amount which was merged in the California judgment," interest of $21,525.00, plus $4,063.43 "additional on the unpaid California judgment for payments made by plaintiff on defendant's behalf, and attorney fee," all coming to a total of $107,588.43. No appeal was taken from that judgment.

In early 1972, plaintiff initiated supplementary proceedings in the District Court to effect collection of her 1971 judgment. Thereafter defendant filed a petition in bankruptcy, listing plaintiff's judgment as a debt subject to discharge, and the supplementary proceedings were continued pending the action of the bankruptcy court. The referee in bankruptcy entered an order in August 1973 releasing the defendant from "all dischargeable debts," making specific exception for debts excepted from discharge under section 17a of the Bankruptcy Act, 11 U.S.C. § 35.

Defendant then filed a motion to dismiss the supplementary proceeding on the ground that the debt had been discharged in bankruptcy. The court, on June 12, 1974, denied the motion without hearing evidence and set an "evidentiary hearing at a later date." After the initiation of further proceedings aimed at discovering assets available to satisfy the judgment the parties consented to an "agreed entry," made on September 9, 1974, in which defendant was ordered to pay $100.00 per week to the clerk of court to be applied against the 1971 judgment. The agreed entry reserved to defendant his right to appeal "any of the Court's rulings in the matters herein." This appeal followed.

■ Our initial concern is whether we have jurisdiction to review an "agreed entry" purporting to preserve defendant's right to appeal. The June 12 order, denying the motion to dismiss the proceeding on the ground that the debt had been discharged in bankruptcy, was not a final disposition of the merits because of the provision setting an "evidentiary hearing" for a later date. As it turned out, the evidentiary hearing the

court had in mind was not to hear evidence bearing on dischargeability but only to inquire into the availability of assets to satisfy the judgment; but this was not apparent from the June 12 order itself, and that order was therefore not final and appealable. The first order that finally determined the issue of dischargeability was thus the order of September 9, which required defendant to make weekly payments to the clerk. Defendant did not acquiesce in the ruling on dischargeability by agreeing to the entry of that order. The reservation of the right to appeal makes it clear that he agreed only to make payments which would be applied toward satisfying the judgment if it was ultimately sustained. He is therefore not foreclosed from appealing the ruling on dischargeability. A timely notice of appeal from the September 9 order having been filed, we have jurisdiction to hear the appeal.

Section 17a(7) of the Bankruptcy Act provides in pertinent part:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (7) are for alimony due or to become due, or for the maintenance or support of wife or child . . . ."

Despite the parties' express description of the obligation created by paragraph 11 of the 1960 agreement as "alimony," defendant maintains that section 17a(7) does not except that obligation from discharge, because, under the terms of divorce decree and in view of the unusual view of alimony taken by Indiana law, the obligation was incurred as an element of a property settlement rather than for support of the wife. The issue before us, then, is whether the term "alimony" as used in the agreement, which was incorporated by reference in the divorce decree, refers to the type of obligation contemplated by the term "alimony" in the Bankruptcy Act.[1]

The authorities are clear, and the parties do not dispute, that "alimony" in section 17a(7) of the Bankruptcy Act means payments in the nature of support for a former spouse. See *Norris v. Norris*, 324 F.2d 826, 828 (9th Cir. 1963); *In re Baldwin*, 250 F.Supp. 533, 534 (D.Neb.1966); 1A *Collier on Bankruptcy*, ¶ 17.23, at 1678 (1975); 3A *Collier on Bankruptcy*, ¶ 63.13, at 1839 (1975); cf. *Wetmore v. Markoe*, 196 U.S. 68, 73–74, 25 S.Ct. 172, 49 L.Ed. 390 (1904). If the debt is determined to be one arising under a property settlement, it is discharged by bankruptcy. *Caldwell v. Armstrong*, 342 F.2d 485, 488 n. 5 (10th Cir. 1965); *Goggans v. Osborn*, 237 F.2d 186, 189, 16 Alaska 451 (9th Cir. 1956); see also *Edmondson v. Edmondson*, 242 S.W.2d 730, 736 (Mo.App.1951).

The law concerning the purpose of an "alimony" award in Indiana is not entirely clear.[2] There are cases which adopt the conventional definition of alimony as "an allowance out of the divorced husband's estate made to the divorced wife for her support and maintenance." *Rariden v. Rariden*, 33 Ind.App. 284, 285, 70 N.E. 398, 398 (1904); see also *Ceiga v. Ceiga* 114 Ind.App. 205, 210, 51 N.E.2d 493, 495 (1943); cf. *Wallace v. Wallace*, 123 Ind.App. 454, 464–465, 110 N.E.2d 514, 111 N.E.2d 90, 92 (1953). A second line of cases derives its authority from the decision of the Indiana Supreme

---

1. We do not view as significant the characterization of the obligation as alimony in the California judgment or the 1971 judgment of the court in this case, not only because in Indiana the term "alimony" does not seem to carry its usual meaning, but also because the issue of whether the "alimony" payments served to divide marital property not described in the agreement or were based on a disparity in the incomes of the parties had not been raised at the time those judgments were entered.

2. Section No. 11 of the Dissolution of Marriage Act, Ind.Code § 31–1–11.5–11 (Burns Supp. 1975), which became law in 1973 and is not applicable in the case at bar, eliminates reference to the term "alimony" in the disposition of marital property. Compare Ind.Code §§ 31–1–12–14,–17 (1973). The parties' economic circumstances and earning ability, however, remain relevant considerations in determining the settlement.

Court in *Shula v. Shula,* 235 Ind. 210, 214–215, 132 N.E.2d 612, 614 (1956):

"Alimony is awarded in Indiana for the purpose of making a present and complete settlement of the property rights of the parties. It does not include future support for the wife, nor is it intended as a medium for providing financial compensation for injured sensitivities during marriage. The primary factor in fixing the alimony is the existing property of the parties. However, other facts which the court may consider are the source of the property, the income of the parties and the nature of the abuse inflicted upon the wife,—particularly if that abuse affected the earning capacity of the wife and would have been the basis for an action in damages except for the fact of the marriage."

See also *Doner v. Doner,* 302 N.E.2d 511, 512 (Ind.App.1973); *Sidebottom v. Sidebottom,* 140 Ind.App. 657, 662, 225 N.E.2d 772, 775 (1967), *rev'd on other grounds,* 249 Ind. 572, 233 N.E.2d 667 (1968). While the *Shula* opinion defines alimony as not including "future support for the wife," it nevertheless includes "the income of the parties" among the relevant factors to be considered in awarding alimony, an implicit recognition that the wife's need for support is not to be entirely disregarded. At least three post-*Shula* cases, moreover, have suggested that an Indiana court should take more into consideration in awarding alimony than relative property rights: In *McDaniel v. McDaniel,* 245 Ind. 551, 558, 201 N.E.2d 215, 218 (1964), the court, while reaffirming the *Shula* precedent, stated nevertheless that "it is the basic concept of alimony that such payment be made in lieu of a wife's right to the continued support of her husband." In *Smith v. Smith,* 131 Ind.App. 38, 46, 169 N.E.2d 130, 134 (1960), an appellate court recognized that property rights could be adjusted "without awarding alimony." Finally in *Wellington v. Wellington,* Ind.App., 304 N.E.2d 347, 353 (1974), the appellate court concluded that "alimony serves a dual purpose—a method to aid in the equitable distribution of property and a method to provide continued maintenance or support if deemed appropriate." See also Note, "Indiana's Alimony Confusion," 45 *Ind.L.J.* 595, 601–603 (1970).

█ It thus appears that one proper consideration, among others, for an award of alimony in Indiana has been the relative income of the wife. An allocation to the wife on that basis is tantamount to an allowance for support.

█ The question remaining is the basis for the alimony payments in issue. The obligation to make those payments had its inception in the "Property Settlement Agreement," which, as we said above, the divorce decree describes as an agreement "to divide all of the marital property" and approves as "a fair and equitable division of the marital property." This language in the decree, without more, would support an inference that the agreement served only to divide the marital property. But since the decree also incorporates by reference the entire agreement, we must consider the agreement itself as if it were part of the decree; and the agreement leaves room for an inference that the alimony payments were not a part of the division of the marital property. As we have noted, the agreement allocates specifically described real estate, securities, automobiles, insurance policies, and other property between the parties; provides for cross-payments of cash adjustments specifically related to items of the allocated property; and then provides for the alimony payments in question here, as well as additional alimony payments which differ from those before us because they are terminable upon the wife's remarriage. The argument could thus reasonably be made that the marital property is divided in the portion of the agreement which purports to do so, and that the alimony payments are intended to balance the incomes of the parties. We cannot conclusively determine that this is the case, however, because the agreement does not state whether the proper-

ty described and allocated therein is all the marital property. It is, therefore, impossible to determine on the record before us whether the alimony provision represents a division of other marital property not described in the agreement, in which case it would be dischargeable in bankruptcy, or whether it was not intended to be a division of property but was instead based on the incomes of the parties, in which case it would not be dischargeable.

The case having been decided by what amounts to a summary judgment, we remand to the District Court with directions to vacate the judgment and try the issue of whether the alimony awarded under paragraph 11 of the agreement represented a further division of marital property or was based on the incomes of the parties. The transcript of the divorce hearing, if one exists, and other evidence of the parties' intentions should be considered. Of greatest significance will be evidence of the existence or non-existence of other marital property not specifically described and allocated in the agreement.

The District Court also allowed interest and attorneys' fees. While the only authority on the point relates to tax claims, 1A *Collier on Bankruptcy*, ¶ 17.-14[a], at 1626 (1975), we believe interest on a non-dischargeable debt takes on the character of the debt itself and is therefore not discharged. Attorneys' fees, however, when awarded by a court other than the divorce court in an action to collect unpaid alimony installments, can hardly be considered alimony, since only the divorce court could award alimony. Any judgment entered on remand, therefore, should not include attorneys' fees.

Remanded with directions.