**In the Matter of Floyd Raymond WOODS, Bankrupt.**

**Appeal of Judith Jean CRABB, Objecting Petitioner.**

**No. 75–1446.**

United States Court of Appeals, Seventh Circuit.

Submitted May 18, 1977.

Decided June 1, 1977.*

* This appeal was originally decided by unreported order on June 1, 1977, pursuant to Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

Arnold H. Brames, Terre Haute, Ind., for appellant.

Robert Howard Brown, Terre Haute, Ind., for appellee.

Before SWYGERT, CUMMINGS and PELL, Circuit Judges.

PER CURIAM.

This case requires resolution of a recurring issue in this court: whether a term of a separation agreement incorporated in an Indiana divorce decree was intended to provide for the support and maintenance of the wife, and thus creates an obligation which is not dischargeable in bankruptcy, or whether the term represents property division and thereby gives rise to a debt dischargeable in bankruptcy proceedings. The bankrupt's former wife, Judith Jean Woods *nee* Crabb (referred to herein as Judith), appeals from the determination by the bankruptcy court that the particular term at issue provided for a distribution of marital property and was therefore a dischargeable debt, and the affirmance of this finding by the district court. Woods, the bankrupt, filed no brief on appeal, so this case is considered by this court on the brief of appellant and record, without oral argument, in accordance with Rule 2 of the Federal Rules of Appellate Procedure.

On March 16, 1973, a decree of absolute divorce from Woods was awarded to Judith. The couple had no children, although Judith had two small youngsters from a previous marriage. A "Separation Agreement" entered into by the parties was approved by the court and incorporated into the decree as a part thereof. This agreement, denominated "the full and complete property settlement between the parties," allocated to Woods property consisting of two motorcycles, a 1968 Oldsmobile, and a stereo, all subject to existing liens and indebtedness. Judith was awarded the marital residence and its furnishings, as well as a 1964 Chevrolet. She assumed the mortgage on the real estate. The contested portion of the agreement provided:

4. It is specifically understood and agreed that the husband does hereby assume as his own sole bills and obligations, and agrees to pay all of same from his own private assets, and indemnify and hold harmless the wife upon, all the following debts of the parties or either of them, to-wit:

a. All debts to Terre Haute Savings Bank or others for siding. . . .

b. Terre Haute First National Bank and others for carpet and air conditioning . . . and any other debts owed to said institution.

c. Avco Financial Services, for king size mattress, cycles and all other items and debts owed to said lender.

d. Sears Roebuck Co.—for TV, refrigerator and all other items and debts owed for or to said company.

e. Debt for World Book Encyclopedias.

f. Woolco Department Store—all accounts and debts.

g. Grants Company—all bills and debts.

5. The wife shall be the sole owner of all the items mentioned in the immediately foregoing paragraphs and sub-paragraphs, notwithstanding that the husband is assuming and obligating himself to pay all debts, liens and encumbrances against the same, and the wife shall have a cause of action against him for any failure to pay or default in paying any of said obligations for any repossessions, harm, judgment or other liabilities or hurts that come to her by reason of his failure to abide by this agreement.

Woods filed his petition in bankruptcy on June 15, 1973, and designated Judith as an unsecured creditor for an indebtedness of an "amount undeterminable." Judith timely filed a petition objecting to the discharge of Woods from the aforementioned debts, characterizing his agreement to assume these obligations as an award in the nature of support and maintenance, which is not dischargeable in bankruptcy.[1]

A hearing on Judith's specifications of objection revealed that she had co-signed with Woods for the debts due Avco,[2] Sears, and the two Terre Haute banks. Woods' net income was approximately $128 per week. Judith realized a weekly income of approximately $65 from baby sitting services she provided in her home, and received $25 per week as child support from her first husband,[3] for a total of $90. The bankruptcy judge, upon review of the foregoing facts, determined that Woods' promise to pay the couple's joint debts was a part of the property settlement, and was not made in lieu of support for Judith. Judith's petition was therefore denied and Woods was discharged from all debts referred to in the separation agreement. The district court affirmed these findings and conclusions.

The findings and conclusions of the bankruptcy judge, which were not disturbed by the district court, must be sustained by this court unless found to be clearly erroneous. *In re Solomon*, 506 F.2d 463 (7th Cir. 1974); *In re Northern Illinois Development Corp.*, 324 F.2d 104 (7th Cir. 1963).

That the award was termed a "property settlement" and did not purport to grant "alimony," in the general sense, to Judith is not dispositive, for it is the basis for creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance. *Nichols v. Hensler*, 528 F.2d 304 (7th Cir. 1976); *White v. White*, 338 N.E.2d 749 (Ind.App.1975). The record before the bankruptcy judge and the district court consisted of a copy of the divorce decree and that separation agreement incorporated therein, but does not conclusively reveal the intent of the divorce court or of the parties in including the disputed term. The law of Indiana, therefore, determines whether Woods' assumption of the

---

1. Section 17(a)(7) of the Bankruptcy Act, 11 U.S.C. § 35(a)(7), provides in pertinent part:

   A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (7) are for alimony due or to become due, or for maintenance or support of wife or child . . . .

2. The Avco debt was secured by the two motorcycles in Woods' possession. He returned this property to the creditor.

3. The bankruptcy judge indicated as part of his findings of fact that the amount of child support was $25 per month. However, Judith's testimony at the hearing clearly places the sum received at $25 per week. App. at 48.

parties' debts is to be construed as dividing the marital property or as providing support for Judith.[4] *Nichols, supra; Desjardins v. Desjardins*, 193 F.Supp. 210, 213 (E.D.Ky.1961), *aff'd as modified*, 308 F.2d 111 (6th Cir. 1962).

In *Nichols, supra*, this court addressed the issue of the actual nature of an alimony award in Indiana, and noted the dichotomy surrounding that question which is evidenced in Indiana case law. One line of cases emphasizes an award to a spouse as purely a property settlement. *See, e. g., Shula v. Shula*, 235 Ind. 210, 132 N.E.2d 612 (1956); *Eppley v. Eppley*, 341 N.E.2d 212 (Ind.App.1976). Another group of cases recognizes the support and maintenance aspects of an alimony award. *See, e. g., Wellington v. Wellington*, 304 N.E.2d 347 (Ind.App.1973); *White v. White*, 338 N.E.2d 749 (Ind.App.1975); *Stanford v. Stanford*, 352 N.E.2d 93 (Ind.App.1976). However, an analysis of the elements considered by the Indiana courts in determining that an award is for future support demonstrates that this agreement can be construed only as a present and complete settlement of the respective property rights of the parties.[5]

First, the agreement makes absolutely no provision for payment of any kind to Judith. The obligation to pay bills incurred during the marriage assumed by Woods benefits Judith too tenuously and indirectly to have been undertaken for her future support. By contrast, Indiana cases considering an award as support invariably involve payment of money, either in gross or periodically, or transfer of property directly to the spouse to be supported. *See, e. g., Wellington, supra; White, supra; Stanford, supra; Ceiga v. Ceiga*, 114 Ind.App. 205, 51 N.E.2d 493 (1943); *McDaniel v. McDaniel*, 245 Ind. 551, 201 N.E.2d 215 (1964); *Boshonig v. Boshonig*, 148 Ind.App. 496, 267

N.E.2d 555 (1971). *Cf. Nichols, supra.* Second, the provision creating the obligation at issue occurs in the midst of provisions allocating property between the parties, and is not separate therefrom or additional thereto. *Nichols, supra* at 308. Third, there is no indication that this term was intended to balance the relative income of the parties. *Nichols, supra* at 308. No children whom Woods is obligated to support are involved; only the support of Judith is at issue. While the record evinces a difference of approximately $38.00 per week between the parties' net incomes, this disparity is not so gross so that it must be presumed by this court that the disputed term is tantamount to an allowance for support. *Compare Stanford, supra; Boshonig, supra; Ceiga, supra.* Finally, the agreement makes no provision for payment of a fixed sum and no specification by the court regarding the character and method of payment, *i. e.*, whether in gross or in periodic payments, as seems to be required by Indiana law. Ind.Code § 31–1–12–17, repealed September 1, 1973. *See White, supra* at 753; *Boshonig, supra*, 148 Ind.App. 498, 267 N.E.2d at 557. In view of these factors, the conclusion of the bankruptcy judge that only property equalization considerations motivated the divorce court and the parties is supported by substantial evidence and is not clearly erroneous.

Judith argues further, however, that Woods' agreement to "indemnify and hold [her] harmless" on the debts referred to in the decree operates as a lien for the amount of indebtedness assumed. Indiana law supports this contention, Ind.Code § 31–1–12–17, repealed September 1, 1973; however, recognition of a lien does not alter the basic nature of the obligation. The decree provides for distribution of marital property whereby each party is awarded some of the mutual possessions and incurs some of the

---

4. This divorce was rendered prior to the effective date of the new Dissolution of Marriage Act, Ind.Code § 31-1-11.5-1 et seq. (Burns Supp.1976). Thus, the old statutory and case law is applicable.

5. The agreement specifically states that the property described and allocated therein repre-

sents a complete disposition of all marital property, and nothing in the record indicates contrariwise. Thus, Woods' agreement to pay the bills does not represent "a division of other marital property not described in the agreement". *Nichols, supra*, at 309.

mutual debts. Debts assumed by reason of such property settlements are dischargeable in bankruptcy. *See Nichols, supra* at 307, and cases cited therein.

For the aforementioned reasons, the findings and conclusions of the bankruptcy judge and the district court are

AFFIRMED.