In re Alan Raymond
CUNNINGHAM, Debtor.

Alan Raymond
CUNNINGHAM, Plaintiff,

v.

Debra Dee BROWN, f/k/a Debra Dee
Cunningham, Defendant.

Bankruptcy No. 90–42073–2.
Adv. No. 90–4212–2.

United States Bankruptcy Court,
W.D. Missouri.

April 3, 1991.

Erlene W. Krigel and Jean Manneke, Kansas City, Mo., for plaintiff.

Maureen A. Monro, Polsinelli, White, Vardeman & Shalton, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor filed his petition for relief on August 17, 1990. On December 7, 1990, debtor filed this adversary action against Debra Dee Brown, his former spouse (hereinafter DDB). The adversary was titled "Complaint To Determine Dischargeability Of Alleged Debt Under Section 523(a)(5)". The evidence adduced at the hearing showed that debtor was granted a divorce from DDB on December 15, 1982. Debtor remarried the next day. Then on May 20, 1983, the parties entered into a settlement agreement and on June 2, 1983 the state

court entered its Journal Entry as to all the monetary issues involved in the termination of the marital relationship. DDB remarried two days after the settlement agreement was executed.

The three page Journal Entry was largely (if not entirely) based upon the detailed and exhaustive twelve page property settlement and agreement executed by both debtor and DDB. Said document clearly set out each and every understanding of the parties. Provisions as to the children are in Section A of said agreement. Provisions relating to the alleged maintenance are in Section B of said agreement. All provisions regarding the Division of Property are in Section C. On the surface and as far as the Court can see, it appears that the parties to the divorce were represented by expert and assiduous counsel who negotiated and considered every detail of the financial considerations surrounding the termination of the marital relationship. Further, every understanding and nuance of the settlement was memorialized on paper. The Court's Journal Entry contained the following paragraph:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff shall make maintenance payments to defendant as follows: Plaintiff shall pay to defendant as and for maintenance the sum of $1,300.00 per month commencing on the first day of June, 1983, and continuing on the first day of each month thereafter until the death of defendant or thirty-six (36) of such monthly payments have been made, whichever event shall first occur. Plaintiff shall pay the defendant as and for maintenance the additional sum of $2,000.00 on December 1, 1983, and on December 1st of each successive year until the death of defendant, the death of plaintiff, or seven of such annual payments have been made, whichever event shall first occur. Maintenance payments shall not terminate upon defendant's re-marriage and defendant shall be entitled to receive all such payments not made at time of plaintiff's death".

Against that background, debtor asks the Court to determine that the two provisions for DDB, labeled maintenance, are actually a part of the property settlement and not in the nature of maintenance at all. Debtor is quite correct in suggesting that no matter what a monetary award is called in the state court decree, it only escapes dischargeability if "such liability is actually in the nature of alimony, maintenance, or support". 11 U.S.C. § 523(a)(5)(B). *In re Woods,* 561 F.2d 27 (7th Cir.1977). Further the bankruptcy court is the arbiter of whether the award is dischargeable or not. *In re Goin,* 808 F.2d 1391 (10th Cir.1987). The issue that the bankruptcy court should determine is the intent of the parties at the time the award was made. Obviously intent is subjective and it can only be determined by observation of the acts of the parties and applying normal interpretations to those acts.

Other than the usual recitations of now remembered intent as best suits present desires of either party, debtor relied on the expert testimony of David Woodbury, a domestic relations attorney from Johnson County, Kansas. It was Mr. Woodbury's opinion that the two provisions labeled maintenance, were actually in the nature of a division of property. He based that on three factors. They are:

(1) Debtor retained his business which had a substantial apparent value and these two provisions balanced that value in comparison as to what DDB received;

(2) The two provisions did not terminate upon the remarriage of DDB; and

(3) The alleged tendencies of Judge Woodward not to award substantial maintenance.

The Court finds the testimony of Mr. Woodbury unsatisfying. As to the first factor it is based on what the family home later sold for, not the presumed value when the parties were splitting up. In a financial statement executed by the parties to a bank about that same time, the parties valued the equity in the residence at $90,000.00 to $100,000.00 rather than the $55,000.00 DDB received. As to the second

factor, DDB was never going to agree to a maintenance award that would terminate on remarriage. She planned to remarry and did so two days after the agreement was executed. To have agreed to a maintenance award that terminated upon remarriage would have been to get no maintenance of any kind. For that reason the lack of the award being terminated on remarriage, is not impressive to the Court. As to the third factor, while Judge Woodward might not favor extensive maintenance awards, this Court suspects he does and will approve such an award when all the parties before him recommend same and present him with an agreed order.

The conditions present in 1983 were that the debtor was earning a substantial income and DDB had not worked in five years. Her area of employment was medical technology and certainly a five year hiatus in that rapidly advancing field would require some retraining. It would be only natural to award maintenance to the wife to assist her until she could re-establish her earning capacity. Finally, it seems conceded that both parties treated those payments that were made by debtor as maintenance on their tax returns. The Court simply cannot find evidence that these two provisions were anything other than what they were labeled. The Court, therefore, concludes that the debt to DDB is NOT DISCHARGEABLE under 11 U.S.C. § 523(a)(5).

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under rule 7052, Rules of Bankruptcy.

SO ORDERED.