**In re James C. BALVICH, Debtor.**

**James C. BALVICH, Plaintiff,**

v.

**Joan M. BALVICH & Vaughan and Vaughan, Defendants.**

Bankruptcy No. 89–40614.
No. 90–4006.

United States Bankruptcy Court,
N.D.Indiana,
Hammond Division at Lafayette.

May 22, 1991.

Eric Allen, Greenfield, Ind., for plaintiff.

Kelly Vaughan Busch, Lafayette, Ind., for defendants.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

Of all the disputes which come before this court, those involving dischargeability of a debtor's obligation to a former spouse, pursuant to 11 U.S.C. § 523(a)(5), are the most unpleasant. They combine all of the anger and frustration of a creditor who is unable to receive payment of amounts legitimately due it with all of the animosity of a broken marriage. From the court's perspective, this represents the worst of all possible worlds.

Adding insult to injury is the fact that § 523(a)(5) determinations need not be made by the bankruptcy court. Unlike dischargeability questions based on § 523(a)(2), (4) & (6), where debts are automatically discharged unless the creditor asks the bankruptcy court to make a determination of non-dischargeability, a debtor's obligation to a former spouse or child is either discharged or not, pursuant to § 523(a)(5), based upon the nature of that obligation regardless of whether or not the bankruptcy court has been asked to pass upon the issue. *See* 11 U.S.C. § 523(c). The question of dischargeability is, thus, preserved and, should there be any dispute, may be determined by the state courts in connection with proceedings to enforce the obligation. *See In re Smith*, 125 B.R. 630 (Bankr.E.D.Okl.1991) (citing *In re Littlefield*, 17 B.R. 549, 550 (Bankr.D.Me.1982).

■ The court can understand that it is often more convenient to have the bankruptcy court make a determination of dischargeability. There is already a judicial proceeding on file within which that question can be answered, thus, settling the rights of the various parties near the beginning of the debtor's post-bankruptcy existence. Where the obligations in question are the result of a negotiated agreement, it is probably just as efficient and just as convenient to have the bankruptcy court answer the dischargeability question as it

would be to ask the state court to do so. Nonetheless, where the decree which memorializes the parties' obligations is the product of extensive proceedings before the state court, the interests of efficiency and economy (be it financial or judicial) are not well-served by bringing the question before the bankruptcy court. The prior state court proceedings have already created a judge who is intimately familiar with the circumstances of the parties, and the terms, nature, and purpose of his or her decree. It would cost very little (relatively speaking), in terms of judicial time and attorney fees, to build upon this familiarity when the dispute is reframed in the context of § 523(a)(5) and get an answer to one more argument which the parties are not able to resolve themselves. This would certainly avoid the apparent necessity of, as here, calling the state court judge who presided over the divorce to testify concerning those proceedings and the terms and purposes of the decree. Under such circumstances, to bring the issue before the bankruptcy court merely gives the parties one more tribunal before which they can vent their mutual animosity.

As the reader can undoubtedly surmise by the foregoing introduction, this matter is before the court on a complaint to determine the dischargeability of debtor's obligations to his former wife, pursuant to § 523(a)(5) of the United States Bankruptcy Code. This portion of the Bankruptcy Code excepts from the scope of a debtor's discharge

[A]ny debt–

\*    \*    \*    \*    \*    \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that –

\*    \*    \*    \*    \*    \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. 11 U.S.C. § 523(a)(5)(B).

The debtor contends that all of his obligations, with the exception of those specifically denominated as child support, are dischargeable. The defendant originally contended that all of the debtor's obligations to her are non-dischargeable. As is usually the case, the truth lies somewhere between these unreasoning extremes.

## FACTS

Plaintiff and defendant were childhood friends and sweethearts. They were married on June 2, 1973. Thirteen years later, on September 24, 1986, they separated. Plaintiff/debtor filed a petition to dissolve the marriage on October 28, 1986. The Boone Circuit Court granted the petition by a decree of dissolution entered on June 20, 1989. On the same date, the court approved an agreement of settlement, which had been entered into by the parties, dividing their property between them and memorializing their various post-dissolution commitments to one another. One issue which remained unresolved on the date the decree was entered concerned the debtor's liability for 1988 taxes. This issue was resolved by the Circuit Court's order of July 17, 1989.

During the course of the marriage, the parties had four children. Although custody of these children is joint, they are to reside with the defendant with debtor having reasonable visitation rights.

Plaintiff/debtor is a doctor. These skills enabled him to earn a very comfortable, if not substantial income, of $200,000.00 a year or more. His former wife, the defendant, never worked outside the home during the course of their marriage.

The income from Dr. Balvich's medical practice enabled him not only to comfortably support his family but apparently offered the opportunity for numerous investments. Many of these investments, however, appear to have been highly leveraged, having been purchased with borrowed funds. Unfortunately, it seems that these investments were not as successful as he had hoped. At least it appears that any income they produced was not sufficient to pay the debt service associated with their acquisition. Furthermore, many of these investments seem to have been illiquid. This, combined with a potential decline in value since the date of acquisition, appears to have prevented their sale in order to satisfy the debts incurred to acquire them.

The parties' settlement agreement, entered into in connection with their divorce, imposed substantial financial obligations upon the debtor. Apparently, these new obligations, combined with his other debts, proved to be beyond his capabilities. Soon after the divorce, Dr. Balvich filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on October 31, 1989. On February 12, 1990, the debtor initiated the current adversary proceeding. By his complaint, he asks the court to declare that all of his obligations to his former wife, with the exception of those specifically denominated as child support, are dischargeable debts. By her answer, the defendant initially took precisely the opposite position—that all of the debtor's obligations to her were non-dischargeable as being in the nature of alimony, maintenance, or support. Since that time her position has moderated somewhat.

The state court decree in question is a unique hybrid of voluntary agreement and judicial resolution. It is not purely one or the other. As the divorce proceeded to trial, it became apparent that the dispute between the Balvichs would be a long and bitter one, which, because of the complicated nature of their financial affairs, would require extensive proceedings if brought to trial. In an effort to produce a more mutually satisfactory and less expensive solution than that which often results from judicial decrees following trial, the Honorable Ronald E. Drury, Judge of the Boone Circuit Court, offered to assist the parties and their attorneys through mediation. They accepted his proposal and, as a mediator, Judge Drury presided over approxi-

**332**

mately three days of meetings. As a result of these sessions, the Balvichs were able to resolve most of the issues which originally separated them. These sessions produced some type of agreement on all but three issues and these three issues were submitted to the court, either formally or informally, for a decision.

The Balvichs were unable to agree on the amount of child support Dr. Balvich would pay on account of their four children and the extent to which Dr. Balvich would pay his wife's attorney fees as a result of the divorce. These first two issues were apparently informally submitted to the court for a ruling. Judge Drury's decision on them was issued in a letter to counsel, dated March 7, 1989. This ruling, together with the understandings which had been reached during the mediation process was then incorporated into the agreement of settlement which was filed with and approved by the court on June 20, 1989. The third issue upon which the Balvichs could not agree concerned Dr. Balvich's responsibility for 1988 income taxes. This dispute was resolved by formal findings of fact and conclusions of law entered on July 17, 1989.

As a result of the proceedings before the state court, Dr. Balvich's obligations to his former wife are essentially memorialized by three separate documents. The first is the agreement of settlement filed and approved on June 20, 1989, as supplemented by the second document, the court's letter ruling of March 7, 1989 concerning child support and attorney fees. The third document is the findings of fact and conclusions of law, issued on July 17, 1989, concerning the 1988 taxes.

Both parties agree that the obligations imposed upon the plaintiff by Article XVI, of the agreement of settlement captioned "Child Support," represent a non-dischargeable debt. Since these proceedings were initiated, the defendant has acknowledged that the following obligations imposed upon the debtor constitute a division of property and are not in the nature of alimony, maintenance, or support: Sections 9.2, 10.3, 10.4, and 10.5. As a result of the lack of any dispute concerning the charac-

terization of these obligations, the court's decision will not address them. Instead, this decision is confined to the obligations over which there continues to be a dispute. These obligations are contained in Sections 3.3, 5.3, 5.4, 6.2, 10.2, 11.2, 11.3, 12.1, 13.1, 13.2, and 17.6 of the settlement agreement. Additionally, the debtor's obligation to be responsible for 1988 income taxes, as set forth in the court's order of July 17, 1989, is also in issue.

█ Although the dischargeability of the debtor's obligations to his former wife as identified above are in issue, the obligations contained in several of the enumerated sections of the property settlement agreement are very easily disposed of, to the extent that they probably should not even be the subject of this litigation. It is axiomatic that the only obligations which are discharged through bankruptcy are the debtor's. See 11 U.S.C. § 524(e). Consequently, the issue before this court concerns the dischargeability of debtor's obligation to the defendant—not the other way around. The following sections of the property settlement agreement impose no obligations upon the debtor (who was the petitioner in state court) in favor of his former wife (who was the respondent). They either identify the parties' respective liabilities as to a particular obligation or asset or impose an obligation upon the defendant/respondent in favor of the debtor/petitioner. These are as follows:

Section 5.3 of the decree provides that each party shall be responsible for payment of the taxes upon its share of the income, profits, gains etc. of certain assets that were divided between them. Section 5.4 then requires the defendant/respondent to hold the debtor/petitioner harmless from the tax liability he might incur arising out of her share of those assets which were distributed to her.

Section 11.3 also imposes an obligation upon the defendant/respondent, not upon the debtor/petitioner. (Section 10.5 which was originally in issue did the same thing but defendant has since ac-

knowledged that this constitutes a property division).

## LEGAL STANDARD

■ As stated above, the Bankruptcy Code excepts a debt for alimony, maintenance, or support from the scope of a debtor's discharge. 11 U.S.C. § 523(a)(5)(B). The bankruptcy court looks to principles of federal law when making this characterization. *Matter of Seibert*, 914 F.2d 102, 106 (7th Cir.1990). "[I]n determining whether an obligation memorialized in a divorce decree is dischargeable, the bankruptcy court must attempt to effectuate the parties' or the divorce court's intent." *Matter of Coil*, 680 F.2d 1170, 1172 (7th Cir.1982) (citing *In re Woods*, 561 F.2d 27 (7th Cir.1977)). The factors considered in assessing the court's intent are: 1) Whether the decree includes a provision for payment to the former spouse; 2) whether the provision creating the obligation is situated in the midst of provisions allocating property; 3) whether there is an indication that the provision was intended to balance the relative income of the parties; and 4) whether the provision describes the character and method of payment. *Id.* The factors enumerated in *Woods* are not, however, exhaustive or necessarily determinative. *Coil*, 680 F.2d at 1172. Other courts have identified many more considerations to help determine the intent of the parties. *See In re Coffman*, 52 B.R. 667, 675 (Bankr.D.Md.1985). When making its determination, the court must examine the debt owed within the confines of the decree from which it emanates. *See Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984). Thus, the present financial circumstances of the parties should not be considered by the bankruptcy court in making this determination. *Id.; Forsdick v. Turgeon*, 812 F.2d 801, 803–04 (2nd Cir.1987).

## ALIMONY

■ Article XII requires the debtor to pay the defendant alimony in "the sum of Thirty Thousand Dollars ($30,000.00) with interest at the rate of ten percent (10%) per annum." Defendant's Exhibit "2," Section 12.1a. These payments are to be made over a period of five years beginning July 1, 1989. The debtor has no obligation, however, to continue making these payment after the respondent's death. Defendant's Exhibit "2," Section 12.1e. The obligation is characterized as "alimony" and is specifically so treated for tax purposes. The agreement also states that the payments are not to be construed as child support and are not being paid in lieu of child support. Defendant's Exhibit "2," Section 12.1d.

■ Debtor contends that, despite the heading for this section, this obligation cannot be alimony because Indiana law does not authorize a court to award alimony. Consequently, since it is not to be construed as child support, debtor rationalizes it must be a property settlement and, therefore, dischargeable.

■ The debtor's almost exclusive reliance on state law concerning alimony is not persuasive. While state law is not meaningless, it provides only guidance and is not determinative. *In re Yeates*, 807 F.2d 874, 877–78 (10th Cir.1986). Whether or not an obligation represents non-dischargeable alimony within the context of § 523(a)(5) is a question of federal not state law. *Seibert*, 914 F.2d at 106. Thus, "a debt could be in the 'nature of support' under § 523(a)(5) even though it would not legally qualify as alimony or support under state law." *Yeates*, 807 F.2d at 878. In this way, the dischargeability of a debtor's obligations to a former spouse are freed from "the fortuitous influences that cause a state legislature to structure its statute in a particular way ... ensur[ing] uniformity of treatment of debtors who are similarly situated." *Seibert*, 914 F.2d at 106. Furthermore, just because the state court could not have imposed a particular obligation upon the debtor, does not mean that the parties could not agree to such an obligation. *See Pfenninger v. Pfenninger*, 463 N.E.2d 1115, 1119 (Ind.App.1984). *See also In re Maitlen*, 658 F.2d 466, 471 (7th Cir.1981).

The debtor's obligation to pay alimony has features of both a dischargeable prop-

erty settlement and non-dischargeable alimony, maintenance, or support. The fact that the obligation is to be paid with interest may reflect an intent by the parties that the obligation represents a division of property. *See generally Coffman,* 52 B.R. at 675. Nonetheless, the fact that debtor has no obligation to continue making these payments after the defendant's death indicates a debt for alimony, maintenance, or support. *Maitlen,* 658 F.2d at 469. *Coffman,* 52 B.R. at 675; *In re Wisniewski,* 109 B.R. 926, 930 (Bankr.E.D.Wis.1990). Given the conflicting suggestions contained in this particular portion of the agreement, the court must look to other portions of the agreement and the circumstances of the parties at the time it was entered into in order to determine the proper characterization of the obligation. *In re Fornachon,* 99 B.R. 428, 430 (Bankr.E.D.Mo. 1989). Resort to other portions of the agreement is particularly appropriate in this case, given the fact that many of the various obligations are intertwined and, at least to some extent, the obligations imposed upon the debtor by one portion of the agreement were dependent upon and framed with an eye toward obligations contained elsewhere. Judge Drury commented upon this interdependence when he noted in his testimony that nothing can be taken in a vacuum and all things have to be considered together. Excerpts of Trial Record, September 24, 1990, p. 70, ln. 3–10. *See In re Gianakas,* 917 F.2d 759 (3rd Cir.1990). (Even an obligation designated as property settlement may be related to support, because state courts often will adjust alimony awards depending on the nature and amount of marital assets available for distribution).

Despite the conflicting conclusions which can be drawn from the language of Section 12 of Article XII, when that obligation is considered in the context of the parties' circumstances existing at the time of the divorce and in relation to the other obligations contained in the decree, the court is persuaded that debtor's obligation to pay alimony is a non-dischargeable debt pursuant to § 523(a)(5). The obligation is specifically called alimony. While the label is not controlling, it does provide some insight into the parties' intent concerning the nature of the obligation. *Woods,* 561 F.2d at 29. The payment of this sum was to be made out of the debtor's future income. This fact, combined with the fact that the payment was not being made on account of any property which had been set aside to the debtor, are strong indications that the obligation is non-dischargeable. *See generally Coffman,* 52 B.R. at 675. Similarly, in determining the amount of child support which the debtor should pay, Judge Drury in his letter ruling of March 7, 1989 (Defendant's Exhibit "3") specifically recognized that he was awarding Mrs. Balvich "far less" than she had sought. He did so because he was "cognizant of the fact that wife is receiving substantial property in the dissolution settlement agreement." Defendant's Exhibit "3," p. 2 par. 2. These same sentiments were then reflected in and incorporated into the support obligation imposed upon the debtor by Article XVI of the settlement agreement. Defendant's Exhibit "2," Section 16.6. Consequently, the debtor's obligation to support his children was tempered by the other obligations he was assuming as a result of the settlement, which would, of necessity, inure to their support as well. This recognition, combined with Mrs. Balvich's lack of employment and any meaningful history of employment during the marriage, persuades the court that debtor's obligation to pay her alimony, set forth in Article XII of the agreement of settlement, is a non-dischargeable debt, pursuant to § 523(a)(5).

## MARITAL RESIDENCE

██ The parties' rights and obligations with regard to their marital residence are the subject of Article XIII of the settlement agreement. Mrs. Balvich was awarded all right, title, and interest to that property and the debtor was to be responsible for satisfying the outstanding indebtedness thereon. He was also made responsible for procuring the release of the mortgage upon that property in the event Mrs. Balvich desired to sell it, as well as having a miscel-

laneous obligation to repair a retaining wall.

The parties clearly contemplated the possibility that Mrs. Balvich might choose to live elsewhere and sell the marital residence. She has, in fact, done so and has since re-married. Despite this subsequent change in her circumstances, the court must construe the agreement as of the time it was entered into and approved by the state court, in order to ascertain the intent of the parties at that time. *Yeates*, 807 F.2d at 878. A subsequent, post-dissolution, change in circumstances cannot alter the intent of the parties and the purpose their agreement was to serve at the time it was entered into. *Gianakas*, 917 F.2d at 763; *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989).

Debtor contends that the obligations imposed upon him by Article XIII of the agreement represent a dischargeable division of property. While this might be a correct position if the court considered only the division of their equity (value over and above encumbrances), the argument is less persuasive when applied to the lack of equity represented by the outstanding mortgage debt.

The court finds that the debtor's liability on the debt secured by the parties' marital residence constitutes non-dischargeable alimony, maintenance, or support. The clear purpose and intent of this obligation was for the debtor to provide his former wife and children with the ability to remain in their former home, should that be their desire. As such, it represents his continued commitment to provide them with shelter. The court can think of few obligations which are more quintessentially in the nature of support than the obligation to provide a roof over the heads of one's family. Such an obligation is not dischargeable. *Gianakas*, 917 F.2d at 764; *Maitlen*, 658 F.2d 466. This remains so even though the parties apparently recognized that Mrs. Balvich might sell the property. By fulfilling his commitment to satisfy the mortgage debt, the debtor effectively frees the sale proceeds from that encumbrance so that they could, potentially, be used to acquire another residence.

## MARITAL DEBTS

The settlement agreement contains a number of provisions which require the debtor to hold his former wife harmless from certain obligations. These provisions are scattered throughout the decree. They are as follows:

Section 3.3 requires the debtor to hold Mrs. Balvich harmless from liability arising out of indebtedness in the name of Brothers Broadcasting Corporation. The stock in this corporation was awarded to the debtor who was also to obtain Mrs. Balvich's release from liability as a guarantor or co-obligor on those corporate loans.

Section 6.2 requires the debtor to hold Mrs. Balvich harmless from the indebtedness created by or for the benefit of James C. Balvich, M.D. P.C. This corporation apparently represents Dr. Balvich's medical practice which was awarded solely to him.

Section 10.2 of the agreement requires the debtor to hold Mrs. Balvich harmless from and indemnify her for specific liabilities which were allocated to the debtor by section 10.1 of the agreement. There are twelve such debts identified in sections 10.1a through 1. They include:

two loans from the professional corporation's defined contribution plan and profit sharing plan totaling approximately $46,900.00. (Section 10.1a and b). Pursuant to section 7.3 of the agreement, the debtor was apparently awarded all of the parties' right to title and interest in both the defined contribution plan and profit sharing plan. Sections 10.1c through f require the debtor to hold Mrs. Balvich harmless from three bank loans totaling approximately $130,000.00 and an educational loan of approximately $8,600.00. Sections 10.1g through 1 require Dr. Balvich to hold his former wife harmless of obligations totaling approximately $150,000.00 which apparently relate to loans obtained to purchase

various investments. Section 5.1 of the agreement provides that the parties will divide one half of the income, profits, and gains from these investments between them.

Section 11.2 of the agreement requires the debtor to hold his former wife harmless from a number of mortgages identified in section 11.1a through f. It appears that most, if not all, of the properties encumbered by these mortgages were awarded to the debtor pursuant to the agreement.

With the possible exception of attorney fee questions, the issue of whether or not a debtor's obligation to hold a former spouse harmless or to indemnify it from obligations incurred during the course of the marriage is always one of the most difficult issues the court must confront in the context of § 523(a)(5). To the extent the obligation is not fulfilled and the former spouse, rather than the debtor, is required to pay it, payment, almost of necessity, will impact upon the non-debtor spouse's ability to support itself, since every dollar which must be paid on account of a previous marital debt is a dollar which is not available to meet current needs. Viewed in this fashion, any obligation from a debtor to a former spouse could, to some extent, be characterized as support. Thus, many times, the issue of the dischargeability of an obligation to hold a former spouse harmless imposed by a divorce decree turns upon the nature of the parties' underlying obligation to the creditor holding the debt in question. If the underlying debt relates to the support or maintenance of a spouse or children (such as home, medical, or educational expenses incurred for their benefit) then the obligation is often non-dischargeable. *Gianakas,* 917 F.2d at 763–764. If, however, the debt to the third party relates to ordinary commercial or other less necessary expenses, the obligation to hold harmless or indemnify is often a dischargeable one. *Matter of Woods,* 561 F.2d 27 (7th Cir.1977). In this way, the bankruptcy courts are able to preserve the debtor's obligation to support its family and to see that they are properly provided for; yet, it cannot immunize the non-debtor from the financial consequences of all the transactions entered into during the course of the marriage.

Having considered the various hold harmless provisions enumerated above, the court finds that all of them represent dischargeable obligations. The information available to the court concerning the debtor's obligation to hold his former wife harmless from and indemnify her for the obligations to creditors is not sufficient to persuade the court that they are non-dischargeable. Debtor's obligation to pay these bills "benefits [his former wife] too tenuously and indirectly to have been undertaken for her future support." *Woods,* 561 F.2d at 30.

## INCOME TAXES

Judge Drury's findings, conclusions and order of July 17, 1989 require the debtor to pay and/or hold the defendant harmless from 1988 tax liabilities, regardless of whether a joint or separate return was filed. Debtor's liability for these taxes was one of the three issues which the parties were unable to resolve among themselves and was formally submitted to Judge Drury for a decision. Apparently Dr. Balvich had previously stipulated that he would be liable for any and all state and federal income taxes for the year 1988. This stipulation had been entered into in connection with his efforts to obtain an extension of the tax filing deadline. Dr. Balvich subsequently changed his mind concerning this agreement and it was this change of heart which necessitated the proceedings that resulted in the order of July 17.

In reaching his decision that the debtor should be responsible for these taxes, Judge Drury specifically found

*Wife has relied upon the Husband's stipulation to the Court that he would be responsible for any and all 1988 tax liability when handling her financial affairs and in coming to an agreement regarding the property settlement.* Defendant's Exhibit "4," p. 3 par. 14 (emphasis added).

The state court's decision to require the debtor pay 1988 taxes was based on more than the simple fact that he had previously agreed to do so. The court's finding that the defendant had relied upon this commitment "when handling her financial affairs" persuades this court that the debtor's obligation is in the nature of alimony, maintenance or support, pursuant to § 523(a)(5) and is, therefore, non-dischargeable.

### ATTORNEY FEES

▆ Judge Drury's letter ruling indicates that Mrs. Balvich had incurred attorney fees in connection with the divorce in excess of $50,000.00. Of this total, he required the debtor to pay $41,711.40. Payment was to be made to her attorneys, with interest at the rate of 10% per annum, through monthly installments of at least $3,667.10 each. Mrs. Balvich was to be responsible for the remaining fees due (approximately $11,000.00) and to pay them out of the property awarded to her.

In determining whether this award may be properly characterized as property settlement or support, "the bankruptcy court must attempt to effectuate the party's or the divorce court's intent." *In re Cockhill*, 72 B.R. 339, 341 (Bankr.N.D.Ill.1987) (citing *Matter of Coil*, 680 F.2d 1170, 1172 (7th Cir.1982)). Because the agreement specifically incorporated Judge Drury's March 7, 1989 letter ruling, it is necessary to examine his intentions. As a state court trial judge, Judge Drury naturally had Indiana law in mind when formulating his findings. The award of attorney fee awards in divorce proceedings is governed by statute. *See* I.C. 31–1–11.5–16 and I.C. 31–1–11.5–9, 10, and 11. Because the attorney fee dispute was technically submitted to Judge Drury for a ruling, the award itself did not arise from an agreement made pursuant to I.C. 31–1–11.5–10. Further, since no finding of incapacity was made, as required for an award pursuant to both I.C. 31–1–11.5–11(e) and I.C. 31–1–11.5–9(c), it is apparent that Judge Drury exercised his discretionary power, pursuant to I.C. 31–1–11.5–16, in conferring the attorney fee award.

▆ This court is aware of and disagrees with the decision of *In re Tackett*, 66 B.R. 77 (Bankr.N.D.Ind.1986) to the extent that *Tackett* declares that all attorney fee awards made pursuant to I.C. 31–1–11.5–16 are dischargeable per se. *Tackett* presumes an attorney fee award based upon I.C. 31–1–11.5–16 is not based upon spousal support. The court reasoned that "an award of attorney fees can no longer be logically said to derive from the court's inherent power to award spousal support" because an attorney fee award in Indiana must now have a statutory basis. *Id.* at 78. Since *Tackett* was decided, however, the Indiana courts have conducted a flexible inquiry in awarding attorney fees. Indiana courts now consider several factors when exercising their discretion to award attorney fees in marriage dissolution proceedings. These factors include the resources of the parties, their economic condition and the ability of the parties to engage in gainful employment and earn adequate income. *Barnes v. Barnes*, 549 N.E.2d 61, 66 (Ind.App.1990); *Euler v. Euler*, 537 N.E.2d 554, 556 (Ind.App.1989); *Sovern v. Sovern*, 535 N.E.2d 563, 567 (Ind.App. 1989).

The United States Bankruptcy Court for the Northern District of Illinois has stated that an award of attorney fees "based on the financial resources of the parties, ... ordinarily indicates that the award is in the nature of maintenance or support." *In re Kijewski*, 91 B.R. 48, 50 (Bankr.N.D.Ill. 1988). Another bankruptcy court within the Seventh Circuit has observed that

> Bankruptcy courts have usually found that attorney fees awarded on a spouse's behalf are non-dischargeable support rather than property division.... This is not to say that attorney fees always are categorized as support. If such an award balances the property division and neither party requires additional support, it is likely to be dischargeable. *Wisniewski*, 109 B.R. at 930.

▆ When the factors that may be considered by the Indiana courts in awarding the fees are compared to the factors weighed by other bankruptcy courts in de-

termining whether an attorney fee provision is dischargeable under federal law, we conclude that a discretionary attorney fee award made pursuant to I.C. 31–1–11.5–16, can be in the nature of support, under federal law, whether or not maintenance is awarded under state law, pursuant to I.C. 31–1–11.5–9, 10, or 11.

In examining the reasoning behind Judge Drury's award we note that the parties intended for Dr. Balvich, both before and after the divorce, to be the sole bread winner for the family. This intent was evidenced by the final agreement, in that it provided for the support of the children while contemplating that Mrs. Balvich would remain a full time mother. During the course of the divorce Mrs. Balvich incurred attorney fees in excess of $50,000.00. Based upon the financial abilities of the parties, Judge Drury ruled that Mr. Balvich was to pay approximately $41,000.00 of this amount in installments, while allocating the rest to be paid from the property Mrs. Balvich received in the settlement. The required monthly installments exceeded Mrs. Balvich's total monthly income derived from the alimony her former husband was to pay. Judge Drury further clarified that:

> ... their certainly wasn't any property that was set aside to Dr. Balvich, which, in return, he had to pay cash to her to reciprocate for.... Excerpts of Trial Record, September 24, 1990, p. 69. ln. 8–11.

This testimony combined with all the above factors causes this court to find that the attorney fee obligation in the Balvich's agreement of settlement was not intended as a property settlement but is in the nature of alimony, maintenance or support, pursuant to § 523(a)(5), and is, therefore, non-dischargeable.

Judgment will be entered accordingly.